LYMAN MURDOCK *vs.* DAVID AIKIN, supervisor, and J. W. Rathbun and H. Avery, rail road commissioners of the town of Venice.

Where money has been collected and placed in the hands of town officers, for the purpose of paying the interest upon bonds issued by the town, pursuant to the provisions of a statute, and the statute makes it the duty of such officers to apply the money in satisfaction of such interest, a bondholder may maintain an action against such officers, to recover the interest due upon his bonds.

THIS action was brought against David Aikin, as supervisor of the town of Venice in the county of Cayuga, and Judah W. Rathbun and Hamilton Avery, as rail road commissioners of said town. The complaint alleged that said David Aikin, in the month of March, 1857, was duly elected supervisor of said town for that year, and that he immediately thereafter duly qualified as such supervisor, and has from that time acted, and now acts as such supervisor of such town; that said Judah W. Rathbun and Hamilton Avery were, and each of them was in said month of March duly elected rail road commissioners of said town, for the same year, and each of them immediately thereafter duly qualified as such rail road commissioners, and each of them has from that time acted, and now acts as such rail road commissioner of said town. The plaintiff further alleged that on the 2d day of March, 1853, said town of Venice, in pursuance of an act of the legislature of this state, entitled "An act to authorize any town in the county of Cayuga to borrow money for aiding in the construction of a rail road or rail roads from Lake Ontario to the New York and Erie or Cayuga and Susquehanna rail road," passed April, 16th, 1852, and for the purpose of aiding the construction of the Lake Ontario, Auburn and New York rail road, and in pursuance of said act and statute, and in accordance therewith, under the hands of the then supervisor and rail road commissioners of said town of Venice, made its certain bond or writing obligatory,

(number four,) bearing date on the day last aforesaid, wherein and whereby said town of Venice promised to pay to bearer $1000 with interest, at the rate of seven per cent, payable semi-annually on the first days of January and July in each year, on surrender of the coupons attached to said bond respectively as the interest became due thereon, at the Bank of the State of New York in the city of New York, the principal of said bond or writing obligatory to be reimbursable or payable at the same place, at the expiration of twenty years from January 1st, 1853. And that said town for a valuable consideration and for the full amount of the face of said bond, paid by the plaintiff, and in pursuance of and in accordance with the said statute, and for the purposes aforesaid, sold and delivered said bond to the plaintiff, who thereby became and now is the legal owner and holder and bearer thereof. That by the terms and conditions of said bond, the sum of $35, the interest money on said bond for six months, became due January 1st, 1857; that at the time when the said interest money became due and payable, and afterwards and on the 1st day of April, 1857, the plaintiff demanded payment of the same at the place of payment specified in said bond, and also at the same time offered to surrender the coupon expressing the amount of interest to be due on said bond, January 1, 1857, for the six months previous to that day, attached to said bond, yet the said town of Venice, and said defendants as such supervisor and rail road commissioners as aforesaid, utterly refused and still refuse to pay the same or any part thereof. There was a similar count in respect to another bond (number five) of the same date and amount and of a similar tenor. And there was an averment that $35 became due thereon, for interest, on the 1st day of January 1857; and that payment thereof was demanded and refused.

And the plaintiff further alleged that before he demanded the interest moneys due on said bonds, and when the same became due, the defendants as such supervisor and as such rail road commissioners had received of and from Horace T.

Murdock *v.* Aikin.

Cook, Esq., county treasurer of said county of Cayuga, in pursuance of said statute, and in accordance therewith, the money necessary to pay said interest, and which money was raised according to law, and said statute, for the express purpose of paying the interest moneys growing due on said bonds on the 1st day of January, 1857.

For a third and further cause of action, the complaint alleged that the defendants as such supervisor and as such rail road commissioners as aforesaid, on or about the 1st day of April, 1857, became, were and still are indebted to the plaintiff in the sum of $70, with interest thereon from January 1st, 1857, for so much money before that time had and received by the said defendants as such supervisor and as such rail road commissioners as aforesaid, to and for the use of the plaintiff of and from Horace T. Cook, Esq., county treasurer of said county, in pursuance of and in accordance with said statute and act hereinbefore mentioned. And a demand and refusal of payment were averred. The plaintiff demanded judgment against the defendants as such supervisor and as such rail road commissioners, for said sum of $70 with interest from January 1st, 1857, and costs.

The defendants by their answer denied the material allegations of the complaint; insisted that the act of April 16th, 1852, by virtue of which the bonds mentioned in the complaint were issued, was unconstitutional and void; that the bonds were improperly issued; and that if the board of supervisors of Cayuga county levied and collected any money for the payment of the interest thereon, the same was levied and collected illegally and wrongfully; and that the moneys received by the defendants, if any, from the treasurer of said county of Cayuga, of right belonged to the town of Venice, or the taxable inhabitants thereof, and that the plaintiff had no right, title or interest in or to the same.

The cause was tried at the circuit, before the court without a jury; a jury being waived by consent of the parties. The plaintiff proved the execution of the bonds, by the defend-

ants, and offered them in evidence. The counsel for the de-
fendants objected that the papers offered in evidence were
not bonds as prescribed by the statute. 2d. That the officers
elected in 1853, could not make and execute the bonds; that
under the statute no commissioner could be elected except in
those towns which had taken the initiatory steps under the
statute, or had done some act under the same, prior to such
election. 3d. That if they were acting as commissioners,
they must act as a board, and not separately. 4th. That it
was not averred or proved that any rail road company was
ever organized; or that the consent of two-thirds of the
resident tax payers was ever obtained or filed as required by
said act, and that said papers were not bonds, within the
statute. The court overruled the objections, and the bonds
and coupons showing the interest due, were read in evidence.
The amount of interest due before suit brought was $75, as
shown by bonds and coupons. The judge suggested that the
defendants were town officers, and a part of the machinery
for carrying out the law authorizing the making and paying
the bonds of the town, and that there was no privity between
them and the bond holders, and that in his opinion the plain-
tiff could not recover. To which suggestion and decision the
counsel for the plaintiff excepted. The counsel for the plain-
tiff then offered to show and prove that no funds had been
placed or were in the hands of the Bank of the State of
New York, for the payment of the interest due on said bonds.
The counsel for the plaintiff also offered to show and prove
that the defendants as supervisor and rail road commissioners,
on the 12th of March, 1857, received from Horace T. Cook,
county treasurer of Cayuga county, $2925.04, being the tax
of 1855 and 1856, collected in the town of Venice to pay the
interest on the bonds issued by that town under the law
authorizing the same, passed April 16th, 1852, and that on
the 12th of March, 1857, they executed a receipt therefor in
their official capacities, as follows:

" Received from Horace T. Cook, treasurer of the county

Murdock *v.* Aikin.

of Cayuga, two thousand nine hundred and twenty-five dollars and four cents for the balance of the tax of 1855 and for the amount of the tax of 1856, collected in the town of Venice to pay the interest on the bonds issued by said town of Venice, in pursuance of chapter 375 of the laws of the state of New York, passed April 16th, 1852."

Which said receipt was admitted to have been executed by the defendants, and the plaintiff's counsel offered to read the same in evidence. The counsel for the plaintiff offered to show and prove that after the receipt of the said money by the defendants, and after the interest money claimed in the complaint became due, and before suit brought, the plaintiff presented to the defendants his said two bonds and the said coupons, and demanded payment of the interest due thereon, to wit: $75, and that they refused to pay the same or any part thereof. The defendants' counsel objected to each and every part of the said several offers, and insisted that an action for money had and received would not lie against the defendants, on the facts proved or offered to be proved. The court sustained the objection and refused to receive the said evidence offered. To which decision and ruling the counsel for the plaintiff excepted. The plaintiff then rested his case. The counsel for the defendants moved that the court nonsuit the plaintiff, and the court granted the motion. And from the judgment entered at the special term, the plaintiff appealed.

*Geo. Rathbun,* for the appellants. I. The court erred in excluding the evidence offered, to prove that the defendants had placed no funds in the hands of the Bank of the State of New York to pay the interest due on the bonds. The court also erred in excluding evidence of a demand on the defendants. Those facts were averred in the complaint, and denied by the answer Each was a material issue, and the plaintiff had a right to give the evidence.

II. The decision of the court that there was no privity be-

tween the bondholders and the defendants, and that the plaintiff could not recover, was erroneous. The defendants had received sufficient funds to pay the interest on all the bonds of the town of Venice; it had been paid by the tax payers of the town for this sole purpose. It came to the defendants' hands for this sole purpose. The people of the town, the debtors, had voluntarily paid the money. They had therefore no claim or title to the fund, and no interest in it, only so far as its proper application was concerned. The defendants had no claim to the money. They had received it for a specific purpose, to pay the bondholders the interest due them. Here is a moral obligation. Having received the money for the plaintiff and others, they are estopped from setting up against them any defense or objection to the completion of their undertaking. Their receiving the money for the plaintiff, and agreeing to pay him, whether that agreement is actual or implied, is privity. An action for money had and received, lies in any case where money is paid to one person to be paid by him to another, in the name of the person to whom the same is to be paid. (*Hamilton* v. *Canfield*, 2 *Hall's S. C. R.* 526. *Tenant* v. *Elliott*, 1 *Bos. & Pul.* 3. *Farmer* v. *Russel*, *Id.* 296.) This court ruled the same way in *The Mayor &c. of Auburn* v. *Draper*, (23 *Barb.* 425.) And the question of title of the person to whom the party is directed to pay the same, cannot be inquired into by the receiver. There is, in the act of receiving the money, an obligation assumed and imposed—moral and legal. Equity and good conscience demand its fulfillment; the law will enforce it. Privity—that is, consent, concurrence, knowledge—are assumed and inferred when the party entitled affirms the act and demands its fulfillment.

III. The court erred in nonsuiting the plaintiff, as well as in excluding the evidence offered. The proofs given and offered establish a clear case in favor of the plaintiff. That an action would lie in favor of a person in any case, against a party who receives money for him, and which he is directed or agrees to pay him, and refuses to do, is, as we think, proved

Murdock *v.* Aikin.

in our last point. The only remaining question, then, is this : If an officer, by virtue of his office, receive moneys for certain and specific purposes, to wit, to pay certain debts due the holders of certain obligations—which the statute requires him to do—which his oath of office obliges him to do—which honesty and good faith require, and which morality and equity require him to do—why will not an action lie in favor of the party wronged, against the wrong-doer? Because, said the court, he is a public officer. By what rule, or on what principle, can a court hold that an officer may trample on the rights of another, and withhold from him his property? Are the moral obligations of a public officer less than those of a private citizen? Are his legal liabilities and responsibilities less? The reverse is, and ought to be, true. But are the defendants to be regarded as any thing more or less than mere agents, to receive from the treasurer the funds provided, and to apply those funds as prescribed by the statute? (*Session Laws of 1852, p.* 594, § 4.) And in regard to the question of agency—whose agents does the statute make them in fact? Can they be said to be any more the agents of the town than of the creditor? But where, as in this case, if they are held the agents of the town, the plaintiff affirms their acts, and claims the fulfillment of their agency, does he not elect to make them, and in fact make them his agents? This we claim to be the rule of law.

*W. T. Worden,* for the respondents. I. The defendants are the agents and officers of the town of Venice, and responsible to their constituents, and not to *this* plaintiff, for the discharge of their duties. They owe no allegiance to *him,* and, consequently, he cannot call them to account for official misconduct or neglect of duty.

II. These defendants are only a part of the machinery and agents by and through which the town undertakes to discharge its obligations upon these bonds. If it has failed, through the agency of its own machinery and officers to discharge its

obligations, the town is still liable. The obligation of the town is not discharged *by the failure* of its own agents and officers to pay; and the action, if any, should, therefore, be against the town, and not these defendants. (1 *R. S. 1st ed.* 327, § 1, *title* 1, *art.* 1. *Id.* 356, 7, *title* 5, §§ 1, 2, 3, 8. *Id.* 330, § 1, *title* 1, *art.* 1. *Id.* 350, 351, *title* 5, §§ 1, 2, 3, 8. *Seaman and others* v. *Whitney,* 24 *Wend.* 260.)

*By the Court,* JOHNSON J. The only question presented by this case is, whether the defendants are liable to an action at the suit of the plaintiff to recover the moneys in their hands, which had been collected and placed there, for the purpose of paying the interest of the debt due by the town. The plaintiff was nonsuited at the circuit, on the ground that there was no privity between him and the defendants. The money was paid to the defendants in pursuance of the requirements of the statute. And the statute made it their duty to pay the money thus in their hands, in satisfaction of the interest due upon these obligations of the town. (*Sess. Laws of* 1852, *ch.* 375, *p.* 593, § 4.) The defendants were public officers, with money in their hands, which had been collected and paid over to them for the express purpose of being applied upon these obligations, and for no other purpose. I do not see why the action does not lie in favor of the respective bondholders, against them.

An action for money had and received lies against a sheriff, for money collected by him, in favor of the person for whom the money was collected. This is well settled. (*Shepard* v. *Hoit,* 7 *Hill,* 198. *Armstrong* v. *Garrow,* 6 *Cowen,* 465.) These cases, I think, establish the principle that when it becomes the official duty of any one to pay over money in his hands to an individual, in satisfaction of a particular debt or demand, an action of assumpsit lies if he neglects to pay it over. In the case last cited, Chief Justice Savage said, "the action is recommended by its simplicity, and should be encouraged, where the defendant is in no danger of being misled."

Murdock *v.* Aikin.

There is quite as much privity between the plaintiff and these defendants, as there is between a plaintiff in an execution and a sheriff. In either case the privity is of law, and not of contract. It is founded upon the right on one hand and the official duty on the other. And this, it seems, is sufficient to support assumpsit without any promise other than what the law implies. In this case the money was collected by tax to pay a debt of the town to the plaintiff, and I see no reason why the plaintiff has not just the same right to it that he would have had it been collected by the sheriff upon an execution against the town, after judgment in his favor. And certainly, the official obligation of the sheriff to pay over money collected by him on execution, is no stronger than that which the statute expressly imposes upon these defendants. It is manifest that the town had lost all control over this money, and was not able to give it any other direction. In this respect it is clearly distinguishable from the case of *Seaman* v. *Whitney,* (24 *Wend.* 260.) That was a case where the money was still the money of the debtor, in the hands of his agent, when the action was brought. It had not become the money of the creditor by any promise of the agent, or acceptance by the creditor, and the debtor might still apply the money in any other way as he should see fit. But it is different where money is collected by an execution or collector's warrant. There the debtor loses all control over it. It is in the custody of the law, and the debtor cannot interpose, in any respect, to direct or control its application.

The judgment must therefore be reversed and a new trial granted, with costs to abide the event.

[MONROE GENERAL TERM, September 6, 1858. *Welles, Smith* and *Johnson,* Justices.]