### Elmore P. Ross *v.* Hiram C. Curtiss.

Where, by the statute under which a proceeding is had by a town to raise money for a specific purpose by the issuing of its bonds, the supervisor of the town is directed to pay on such bonds, in payment of the interest thereon, the money received by him from the county treasurer for that purpose, he cannot question the legality of the bonds, and has no discretion in that respect.

In such case, he acts as the agent of the town; and, as such agent, he cannot question the authority of his principal.

THIS action was brought to recover from the defendant the interest on five certain bonds purporting to be issued by the town of Sterling, in Cayuga county, bearing date the 1st of July, 1853. These bonds were issued under date of 1st July, 1853, and purported to be issued under the act of 1851 (Session Laws, p. 544). That statute authorized the supervisors of the town of Sterling, Robert Hume and William Wyman, to borrow on the credit of the town such sum of money as they might deem necessary, not to exceed $25,000, for a term of years not exceeding twenty-five, with such rate of interest as might be agreed on, not exceeding seven per cent, and to execute under their official signatures a bond or bonds on which the interest should be made payable on the 1st of March in each year, and for three years thereafter. It also provided that the said persons should have no power to do any of the acts authorized by the statute until the railroad company therein mentioned should be formed under the general railroad act, and the written assent of two-thirds of the resident persons taxed in said town, as appearing on the last assessment roll, should have been obtained and filed in the clerk's office of Cayuga county. This act was amended (Session Laws 1853, p. 1137), by which the supervisors and railroad commissioners were authorized to issue the bonds with interest payable on the first days of January and July in each year, instead of the first day of March as before provided. The coupons on the bonds were made payable at the Bank of the State of New York, and the bonds had annexed to them a certificate of the county clerk that a paper, pur-

porting to be a written assent of two-thirds of the resident tax-payers of the town of Sterling, had been filed in the office of the clerk of the county of Cayuga.

The bonds when issued were delivered directly to the Lake Ontario, Auburn and New York Railroad Company instead of raising the money thereon by the supervisors.

When the interest became due, the coupons were presented and payment demanded and refused at the Bank of the State of New York, on the 11th July, 1857.

It was admitted that the defendant was supervisor of the town of Sterling on the 25th February, 1857. The board of supervisors of the county of Cayuga by tax raised the amount of money necessary to pay the interest on the bonds, and on the 25th February, 1857, the treasurer paid to the defendant, as supervisor, $1,750, for which the defendant gave receipts to apply the same to pay the interest on the bonds issued by the said town. On the 6th August, 1857, coupons were presented to the defendant and payment demanded and refused.

The complaint sets up the acts of 1851 and 1853, and alleges that the bonds were issued under those acts; that the bonds were issued as required by said acts and under the authority thereby required; that they were delivered to the Lake Ontario, Auburn and New York railroad in payment of a subscription made by the town for $25,000 of the capital stock of said railroad company; that the town received the stock; that the plaintiff is the *bona fide* owner of the bonds; that the interest had been demanded and refused; that the board of supervisors caused to be levied and collected from the town of Sterling a sum of money sufficient to pay all the interest on the bonds; that the defendant, as supervisor, received from the county treasurer $1,750 for the sole purpose of paying the interest on said bonds; that the plaintiff demanded payment from the defendant in August, 1859, which he refused.

The answer admits the raising of the money and payment to the defendant, but denies that it was for the sole purpose of paying the interest, and avers that the bonds were issued

contrary to the provisions of the statute; that they were illegally delivered to the railroad company; that the town never subscribed for the railroad company stock, and denies that the plaintiff is a *bona fide* holder of the bond. The case was tried before a judge of this court without a jury, who rendered judgment for the plaintiff. This judgment was affirmed at the General Term. The defendant appeals to this court.

*D. H. Marsh*, for the appellant.

*D. Wright*, for the respondent.

Ingraham, J. Many of the questions which were raised on the trial of this cause were subsequently disposed of by this court in *Starin* v. *The Town of Genoa* and *Gould* v. *The Town of Sterling* (23 N. Y., 439). The constitutionality of the act under which the bonds were issued, and the authority to date the bonds in 1853, and to issue them by the successors of the officers authorized to issue them under the first act, were therein adjudged.

It was also held in that case that the fact that the written assent of a majority of the tax-payers had been given was necessary and must be shown by the plaintiff to entitle him to recover against the town; and that the bonds, when issued by the town, should be sold for cash, and the money paid to the railroad company, and not delivered to the railroad company in exchange for stock, and to be sold by the company.

In the present case, however, the action is not against the town where the questions as to the validity of the bonds and the constitutionality of the act under which they were issued might with propriety be contested, but against the supervisor of the town to whom the money was paid by the county treasurer under the statute for the purpose, as stated in his receipt, of paying the interest on the bonds issued by the town. By the statute of 1851 (p. 544, § 4), the supervisor is specially directed to pay the money received by him from the county treasurer, on the bonds, in payment of the interest which shall have accrued. Where the statute is thus specific,

it is idle for the defendant to say that he has a right to exercise any discretion whether he will pay the money or not; or to inquire whether the board of supervisors of the county had legally raised the money; or whether the bonds were legally issued. That was no part of his duty. The statute directed him absolutely to pay the money to the holders of the bonds issued by the town, for the interest which should then have accrued. He had nothing else to do but to pay the same in the manner directed. If so, his only duty was to ascertain who were the real owners of the bonds issued, and to pay to them the money so placed in his hands for that purpose. That was the extent of his authority; and when he undertook to review the legality of the acts of the board of supervisors in raising the money, or of the officers authorized to issue the bonds, he exceeded his powers, and assumed to do acts for which he had no authority. An agent has never a right to review the legality of acts done by his principal, but when he receives money to apply as directed by the principal, he has no other duty but to comply with such orders.

I do not, however, deem it necessary to discuss this question any further, as it has been passed upon already in the case of *Murdock* v. *Aikin and others*, decided in 1863. The able opinion of DAVIES, J., in that case renders any further examination unnecessary by this court.

The defendant seeks, however, to relieve himself of the effect of that decision by the suggestion that in this case he denies that the plaintiff was a *bona fide* holder of the bonds. There was no such objection to the plaintiff's title to the bonds upon the trial, except so far as it arose upon the original issue of the bonds, prior to the raising of the money and the payment of it to the defendant; and that is one of the questions which, in *Murdock* v. *Aikin (supra)*, this court held the defendant had no right to dispute.

It is also said that the case of *The People* v. *Mead* (24 N. Y., 114) differs from that of *Murdock* v. *Aikin.* That case was an application for mandamus to compel the officers who had money raised by tax to pay the same to the object for

which it was provided, and the decision of the court was that a mandamus was a proper remedy. The questions which were decided in the case of Murdock and in this case did not properly arise. There the case was decided in the same manner as if the action had been against the town, and the same ruling adopted as in the case of *Gould* v. *The Town of Sterling*.

I am of the opinion that the defendant has no right to litigate these questions. He received the money under the statute for the sole purpose of paying this interest, and he has no power to avoid the discharge of that duty by alleging illegality in the acts of the body from which he receives the money and authority to pay it.

The judgment should be affirmed.

All the judges concurring,

Judgment affirmed.