36 N. Y. 224–DISTINGUISHED, 18 Hun 116, 121.

THE PEOPLE *ex rel.* FIEDLER, Appellant, *v.* JAMES MEAD, Supervisor, etc., Respondent.

*It seems* that it is competent for a town to pay interest on bonds, although their collection could not have been enforced at law, and the trustee who had received the money for such purpose, could not set up that the debt was illegal. Per DAVIES, Ch. J.

*It seems* that an agent has no authority to review the legality of acts done by his principal; when he has received money from his principal, with directions as to the mode of its application, his duty as agent is to comply with his orders.

DISTINGUISHED. THE CASES OF *Starin* v. *Town of Genoa* (23 N. Y., 439), *Murdock* v. *Aiken* and *Ross* v. *Curtiss* (31 N. Y., 606), and *People* v. *Mead* (24 N. Y., 114), commented on and distinguished. THE AFFIDAVIT *filed with the county clerk* pursuant to the second section of chapter 375, of Laws of 1852, is not conclusive evidence of the assent of the tax payers of a town required by such act, in favor of *bona fide* holders of town bonds issued under its provisions.

MANDAMUS. On applying for a mandamus to compel a county treasurer to pay over moneys assessed and collected to pay town bonds, etc., it is a good defense to show that the necessary assent of the tax payers of the town was not obtained to authorize the issuing of such bonds.

*T. R. Strong,* for the appellant.

*D. Pratt,* for the respondent.

DAVIES, Ch. J.   This is an appeal from the judgment of the General Term affirming a judgment of the Special Term denying a writ of mandamus. The alternative writ was issued in September, 1856, and the issues of fact framed were tried at the Cayuga Circuit in January 1858, before Mr. Justice WELLES who directed judgment for the plaintiff. The judgment was affirmed at the General Term, but on appeal to this court was reversed. The cause was re-tried at the Cayuga Circuit in 1863, before Mr. Justice WELLES without a jury, and the justice rendered judgment in favor of the defendants, which, on appeal, was affirmed at the General Term, and the relator now appeals to this court. The case of *Starin* v. *The Town of Genoa* (23 N. Y., 439), and the decision of this case, by this court (24 N. Y., 114), definitely

settled that no action could be maintained upon these bonds against the town issuing them, even by a *bona fide* holder. A contrary ruling has been made by the Supreme Court of the United States, and that court has held that similar bonds, in the hands of a *bona fide* holder, are legal and valid obligations of the town issuing them, and can be enforced. We must adhere to the law as laid down by this court, in the two cases referred to, and therefore hold, that this plaintiff cannot enforce these obligations against the town. A majority of this court, on the previous hearing of this case, held that the writ of mandamus asked for by this relator, to compel these defendants to apply to the county treasurer of the county of Cayuga for the moneys, received by him, and in his hands, levied and collected for the purpose of paying the interest upon the bonds issued by the town of Genoa, ought not to have been issued. The judgment of the Supreme Court awarding the writ was reversed by this court on the ground, that it was not shown that two-thirds of the resident tax payers of the town had signed the written assent to the issuing of the bonds as required by the act authorizing such issue, and that the affidavit relied upon, did not supply that defect of proof.

The judge who tried this action the second time has found as facts : That the written assent of two-thirds of the resident persons taxed in said town of Genoa, as appearing on the assessment roll of said town, made next previous to the transfer of said eight alleged bonds to the said railroad company, as aforesaid, has never been obtained by the said supervisor and commissioners, or either of them, nor by any other person or persons, corporation or body politic in their behalf, or in behalf of any one or more of them, to the effect that such supervisor and commissioners had power to do the acts authorized by said act of the legislature therein referred to as provided in and by the first section thereof, and that the written assent of two-thirds of the resident persons taxed in said towns has never been obtained by any supervisor and commissioners of said town of Genoa, or by any or either of them, nor by any other person or persons, corporation or

body politic, in their behalf or the behalf of any or either of them as provided and contemplated by the said first section of said act.

That before said alleged interest, warrants or coupons became due as therein before stated, a sum of money equal to and sufficient to pay the same when they should become due and payable respectively, as aforesaid, had been levied and collected as in said writ is stated and set forth, but against the report of the supervisor of said town of Genoa, and against his vote, and the same had been paid to the ·treasurer of the county of Cayuga for the purpose of paying the said interest, warrants or coupons so becoming due and payable on the first days of January and July, 1856, and that the said defendants, although often requested so to do, have hitherto and still do refuse to receive the said moneys from the said county treasurer, or to pay the same or any part thereof to the said relator, or to cause or to allow the same to be paid; and the said county treasurer still holds the said last mentioned moneys, and is ready to pay the same to the said defendants upon request, and upon receiving a proper voucher or vouchers for said payment.

The facts now found by the court on the re-trial of this action, are certainly not more favorable to the relator, than those before this court on the former hearing. It may with truth be said, that in all essential particulars they are identical. We do not think it seemly to review and reverse the former judgment of this court in this action, upon the same facts. This court solemnly adjudicated that a mandamus had been improperly awarded by the Supreme Court to these defendants. We are now asked to do the same thing which was then refused, upon the same state of facts, which if done would be a reversal of the previous judgment of this court in this same action. We cannot do this. It is claimed that we should now award this writ, to harmonize or conform to the decisions of this court, in *Murdock* v. *Aiken*, and *Ross* v. *Curtiss* (31 N. Y., 606), decided since this case was before this court on the previous occasion. An examination of the opinions in these cases will show that there is nothing in them

conflicting with the cases of *Starin* v. *Town of Genoa*, and the judgment of this court in this action. The cases in 31st N. Y. were actions against certain officers who had received moneys and had the same in hand, for the purpose of paying the interest due on certain coupons held by the plaintiffs in these actions. It was said in *Murdock* v. *Aiken*, "that the defendants in that action had received the sum of money claimed, for a specific purpose, namely to pay the interest due or to become due to those holding the bonds of the town. If the town thought proper, as it did, through the instrumentality of the law, and by the collection and payment of this money to the defendants in that suit, to concede its liability to pay this interest money, it was not for them to set up that such action on the part of the town, was illegal, and that the bonds so issued by the town were illegal and void. This was not a question which those defendants were in a position to agitate. It was competent for the town to pay the interest on the bonds, although their collection could not have been enforced at law, and the trustee, who had received the money for such purpose, could not set up that the debt was illegal." In *Ross* v. *Curtiss*, it was said that it was idle for the defendant to say that he has a right to exercise any discretion whether he will pay the money or not, or to inquire whether the board of supervisors of the county had legally raised the money, or whether the bonds were legally issued. That was no part of his duty. The statute directed him absolutely to pay the money to the holders of the bonds issued by the town, for the interest which should then have accrued. He had nothing else to do but to pay the same in the manner directed. If so, his only duty was to ascertain who were the real owners of the bonds issued, and to pay to them the money so placed in his hands for that purpose. That was the extent of his authority, and when he undertook to review the legality of the acts of the board of supervisors in raising the money, or of the officers authorized to issue the bonds, he exceeded his powers and assumed to do acts for which he had no authority. An agent has never a right to review the legality of acts done by his principal, but where

he receives money to apply as directed by the principal, he has no other duty but to comply with such orders.

It was claimed on the argument of *Ross* v. *Curtiss* that this case differed from that of *Murdock* v. *Aiken*. The answer to this suggestion was, that that case was an application for a mandamus, to compel the officers who had money raised by tax to pay the same to the object for which it was provided; and the decision of the court was that a mandamus was a proper remedy. The questions which were decided in *Murdock* v. *Aiken*, and in *Ross* v. *Curtiss*, did not properly arise in *The People* v. *Mead*. The latter case was decided in the same manner as if the action had been against the town, and the same ruling adopted as in the cases of *Starin* v. *Town of Genoa*, and *Gould* v. *Town of Sterling*. And the decision of this court, in *Ross* v. *Curtiss*, was put distinctly on the ground that the defendant in that action had no right to litigate the questions which arose in this action; and in the two cases above referred to, reported in 23 N. Y., the liability of the defendant was put solely on the ground that " he received the money, under the statute, for the sole purpose of paying the interest, and he has no power to avoid the discharge of that duty by alleging illegality in the acts of the body from which he receives the money and authority to pay it."

This examination of these cases shows that there is no conflict in the views expressed in them, or the points adjudicated therein, and that this court has so held and declared. It is thus seen that the two cases decided by this court since this present action was under review by it, announced no new doctrine, or any principles that conflict with the opinion then expressed. We see, therefore, no reason for a departure from the views there enunciated, and it follows that the judgment of the Supreme Court appealed from, being in harmony with the opinion of this court, should be affirmed, with costs.

GROVER, J. It was not contended, upon the argument, but that a mandamus was the appropriate remedy in this

:case if the plaintiff was entitled to any. That is too plain for discussion. But for the previous adjudications of this court I should have. held that the affidavit filed with the clerk of Cayuga county pursuant to the. second section, of chapter 375, of Laws of .1852, was conclusive evidence of the assent of the tax payers of the town, required by the act in favor of a *bona fide* holder of bonds issued under its provisions. But those decisions have settled the law of this State otherwise. (*Starin* v. *The. Town of Genoa*, 24 N. Y., 439 ; *The People ex rel. Fielder* v. *Mead*, 24 N. Y., 114.) The affidavit must, in accordance with these decisions, be regarded as furnishing no evidence upon that point. The finding of the judge that an assent of two-thirds .in number of the tax payers was not given was correct, as this fact was not proved by evidence other .than the affidavits. · The bonds must be held to have been issued without any power. and therefore as possessing. no validity. These conclusions are the necessary result of the cases .cited, *supra.*. The relator has no legal demand against the town nor any title to the money in the county treasury, which by this proceeding he is endeavoring to reach. I do not, therefore, see upon what ground he is able by mandamus to compel the officers of the town to do acts to enable him to obtain money belonging to the town to which he has no claim. If he can compel in that way those officers to go to the county treasurer and get the money and pay it over to him, I do not see why he might not in the same. way compel the board of supervisors to levy the tax upon the town necessary to pay not only his interest but the principal. These defendants owe no duty to the plaintiff, because he has no title to the money. It is insisted that *Ross* v. *Curtiss* (31 N. Y., 606), and *Murdock* v. *Aiken*, decided by this court, not reported, show that the plaintiff is entitled to the money raised by the town for the purpose of paying the interest upon the plaintiff's bonds. These were actions brought by the holders of bonds against the officers of the town to recover money in their hands which they had received for the express purpose of paying the same to the plaintiff to be applied thereon. Judgment in each case was

given for the plaintiff upon the plain, familiar principle that an agent or trustee receiving money to be paid over to his principal or *cestui trust*, is not permitted to dispute the right of the party for whose benefit he received it; and cases establishing this doctrine were cited by the court. But this does not show that the court, by mandamus, at the suit of a party having no right, will compel an officer to go and demand and receive from another officer, money and pay the same over to him. The plain answer is you have no right to the money, and, therefore, the defendant owes no duty to you to perform these acts. In *Elmore* v. *Ross*, the plaintiff proved a good title to the money by showing it in the defendant's hands, and that it was received by the latter in trust to pay it to him. This established his right as against the defendant. It became necessary to prove the bonds, only for the purpose of showing that the defendant received the money in trust to pay the plaintiff. It was wholly immaterial whether the bonds were or were not valid. Not so in this case. The bonds and coupons are the foundation of the plaintiff's claim, and these being invalid, his right fails, and he having no right to any money has no right to a mandamus to compel anybody to do any act to enable him to obtain it. It is said that if the town does not dispute the plaintiff's title, no one else can. The town has no power to recognize these bonds, or in any manner to raise money to pay them. The bonds being invalid the plaintiff is in the same position he would be if he had no bonds at all, and the money was raised as a donation for him. In such a case, I apprehend, no one would insist that a mandamus would lie to compel officers to do acts to enable the plaintiff to get the money. The legislature can, and probably will, relieve the plaintiff and others similarly situated, upon equitable terms, but I am unable to see how the courts can furnish a remedy without a violation of principle. The judgment appealed from should be affirmed.

All concur, except PORTER, J., who took no part.

Affirmed.