This case is distinguishable from and not within the principles which were controlling in Murdock v. Aikin (29 Barb., 59); S.C. in Court of Appeals in 1863, opinion by DAVIES, J., andRoss v. Curtis (30 Barb., 238; 31 N.Y., 606). In each of those cases the defendants had demanded and received the moneys for the use and benefit of the bondholders, and had the same solely as their agents and trustees, and could not within well-settled principles be permitted — after having availed themselves of their agency, and affirmed the right of the bondholders, their principals and cestuis que trust, for the purpose of obtaining the money — when called on by them, to controvert their right to it. In the language of Judge GROVER, inPeople v. Mead (36 N.Y., 224), "judgment in each case was given for the plaintiff upon the plain familiar principle that an agent or trustee, receiving money to be paid over to his principal or cestui que trust, is not permitted to dispute the right of the party for whose benefit he received it."
This principle is not applicable to the case in hand. It was assumed in the cases cited, whether with strict accuracy either as to the fact or the law it is not necessary to consider, that it was competent for the debtor town to pay the interest on the bonds, even though their collection could not have been enforced by law, and that the payment of the money to the defendants, to meet the interest, was the completed act of the town by which its liability was conceded; and the defendants occupied the position of agents receiving money for their principal from a person acknowledging the right of the principal to it, and could not, therefore, controvert the claim of the latter.
The defendant, in these proceedings, occupies no such position to the town, or the relators, or to the bondholders. Under a general warrant of the supervisors of the county of *Page 190 
Delaware, for the collection of taxes charged upon the town of Hancock, for all purposes, and directed to the defendant as collector, the money claimed by the relators was collected and received; but it was received by him as a public officer, and not as agent or trustee for any person or class of persons, and as part of and inseparable from a much larger sum, as to the collection of which he had no discretion. He could not discriminate between the purposes for which the aggregate taxes were levied, and collect a part and omit the collection of the residue. He is not estopped, by the character he assumed in obtaining the money, from asserting any valid objection to the claim of the relators. The authority to the collector and the direction in his warrant was not the act of the town assenting to the payment of the moneys to the relators or conceding its liability upon the bonds. It was the act of the board of supervisors of the county, at the instance and upon the request of the relators; an official, ministerial act under the statute, not in any way affecting any of the questions sought to be made here as to the issue and validity of the bonds or the liability of the town. The relators claim the money, not as public officers entitled to it as well under general laws of the State to have and receive money for public use, as the direction in the warrant pursuant to such laws, but as agents and trustees for a single class of persons and for the payment of an alleged and specific liability. Whatever we may think of the suggestion of Judge DAVIES, in Murdock v. Aikin (supra), that it would be competent for the town to waive a defence to the bonds and pay the interest, it is sufficient that no act or concession of the board of supervisors of the county can estop or bind the town, and that, if no bonds had ever been issued or no valid bonds upon which the town was liable, while the levying of a tax by the supervisors, for the payment of interest upon bonds supposed to have been issued pursuant to law, might be a valid exercise of the taxing powers, so as not to vitiate the whole tax levy for the year, a direction to pay the amount to the agents or trustees of the bondholders would be a nullity. *Page 191 
I incline to the opinion that the warrant to the collector should have followed the general statutes, and directed the payment of all moneys collected, other than those required by law to be paid to the county treasurer and certain town officers, to the supervisor of the town. (1 R.S. [E. ed.], 829, § 1; id., 915, § 36.) But it is not necessary to pass upon this question.
The power of the supervisors to direct the payment of any money to the relators, and the authority of the latter to demand and receive it, depends upon the existence of outstanding obligations of the town, to the payment of which the money would be properly applicable. The defendant, then, has moneys which he was bound by law to collect, but to which the relators are not entitled by reason of any special relation between the defendant and themselves. He received and holds them as a public officer, to be disbursed only pursuant to law.
The writ of mandamus only issues to give effect to a clear legal right existing in the relator; that is, the party asking for a mandamus must be clothed with a clear legal and equitable right to the thing demanded, and which thing is properly the subject of the writ, legally demandable from the person to whom the writ must be directed. (People v. The Mayor of Brooklyn,
1 W.R., 318; People v. Supervisors of Chenango, 1 Ker., 563;People v. Ransom, 2 N.Y., 490; Tapping on Mandamus, 28 Law Lib., 320, 321.) The relator must succeed on the strength of his own title to the money or thing demanded, and not on the defects or want of title in the defendant or any other person. It does not therefore aid the relator that neither the collector nor the town of Hancock has legal title to the money, if that could be shown. If the relators have no legal claim to it, and there are no bonds outstanding to the payment of the interest upon which it is applicable, a way will be found to appropriate it to the use of the public from whom it has been collected. The relators are only entitled to demand and receive the money for the payment of interest upon bonds issued pursuant *Page 192 
to law, and which are outstanding valid obligations of the town; and if there are no such bonds, they make no title to the money If the bonds issued are invalid, the relators are in the same position they would have been in if no bonds had been issued, and the money had been raised without consideration, and as a donation. (Per GROVER, J., People v. Mead, supra.) It is incumbent, therefore, upon the claimants to show every fact material to their title. They could only claim the money upon proof that bonds had been issued in compliance with the provisions of the act authorizing the bonding of the town, as their authority to issue the bonds, and their consequent validity, depended upon such a compliance. The relators assumed this burden in making their case. They aver, and by their affidavits presumptively show, that the required consents of the tax-payers were obtained, and the formal affidavit of the assessors in proof thereof made and filed with the consents, as prescribed by the statute. They made a prima facie case, and, had their affidavits not been controverted, they would have been entitled to the writ. The prominent fact alleged by the relators is that which the statute makes a condition precedent to their right to issue the bonds of the town, to wit, that a majority of the taxable inhabitants, representing a majority of the taxable property of the town, had united in assenting to the issuing of the bonds. The second section of the act (chap. 398 of the Laws of 1866) expressly provides that the powers and authority conferred by the act shall only be exercised upon the condition that the consents shall first be obtained in writing of a majority of the tax-payers of such town or city, owning or representing more than one-half of the taxable property of said town or city, which consents shall be proved or acknowledged in the same manner as conveyances of real estate, etc. That it was the intent of the legislature to make the consents, rather than the formal proof of the fact, essential and indispensable to the exercise of the powers conferred, is very clearly evidenced by the provisions of chapter 61 of the Laws of 1868, intended as a statute of jeofail for all omissions, *Page 193 
defects and irregularities in the proof or acknowledgment of the consents or affidavits in proof of the fact that the required consents had been obtained, but with the same proviso and upon the same condition expressed in the act of 1866 — that the consents had in fact been obtained. The legislature evidently did not contemplate that any adjudication or act of others could dispense with the assents required by the statutes. This fact, which lies at the foundation of the relator's claim to perform any act as commissioner, or exercise any of the powers conferred, is controverted by the defendant; and assuming that the statements in the opposing affidavits are true — as we must in the form in which these proceedings come before us — the primafacie case made by the relators is overcome.
If relators, demanding a writ of mandamus, elect to rest their case upon affidavits, the answering affidavits — which in such case must take the place of a return to an alternative writ, neither traversed, or confessed and avoided — must be taken as true. If the allegations of the opposing affidavits were not true, or might have been avoided, the relators should have taken an alternative mandamus, and upon the coming in of the return, properly verified, traversed or otherwise answered the allegations, to the end that the question of fact might be tried in an orderly and proper manner. The court cannot, in this irregular way, be called upon to pass upon controverted facts or conflicting affidavits.
The opposing papers clearly show, unexplained and uncontradicted, that the majority of taxable inhabitants, representing, as owners or otherwise, a majority of the taxable property of the town, did not assent to the issue of the bonds. The forms of the assent are open to criticism; and it may be doubtful whether they were not vitiated by reason of a condition therein for the release of individuals who had subscribed to the capital stock of the railroad company. But I do not propose to consider the question as to the sufficiency of the consents in point of form.
The relators now claim, however, that the question of fact, *Page 194 
fairly presented by the affidavits upon which the application was made, is not an open question, but is incontrovertibly settled by the affidavit of the assessors to the fact that the required assents had been obtained.
The act does declare that the fact shall be proved by the affidavit of one of the assessors of the town, or of the town or county clerk, indorsed upon or annexed to the consents, and that the consents and affidavit shall be filed, and "the same, or a certified copy thereof, shall be evidence of the fact therein contained, and shall be admitted in evidence in any court of this State, and before any judge or justice thereof." This is a part of the second section, but not a part of the condition or proviso qualifying or limiting the exercise of the power conferred, but is a part of an independent paragraph.
To give the affidavit the effect claimed for it, would be to exalt the incident and give it a place superior to that of the principal act, and make that the effectual and validating process which was only designed as a method of preserving secondary and presumptive evidence of the effective act and consent of the tax-payers. That this was not the intent of the legislature is plainly inferable, not only from the terms of the act, and the omission to declare the affidavits conclusive proof of the facts contained in them, but also from the supplementary and explanatory act of 1868, declaring in effect the immateriality of all defects, irregularities and omissions in such affidavit, or the filing or recording thereof.
It is quite certain that the consents need not be proved by the affidavit, but may be proved in any other way by competent evidence. That would have to be done if the affidavits were defective or had not been made or filed. The parties are not tied up to the making of proof by the affidavit authorized by the statute. (Jackson v. How, 19 J.R., 80; Jackson v. Eaton,
20 id., 477.) The legislature has in some instances made exparte affidavits conclusive evidence of the facts stated in them; but the facts proved, and the proof of which it was necessary to perpetuate, have been in most instances the acts of the individuals making the affidavit or *Page 195 
acts within their peculiar knowledge, and the statutes have in terms declared that proofs in that form should be conclusive.
The question is really one of interpretation, and depends for its solution upon the intent of the legislature as indicated by the terms of the act. It must be conceded that there is a manifest distinction between making ex parte depositions or other documents proof or evidence of any particular fact, and admissible as such, and making the same evidence conclusive and incontrovertible proof of the same facts. In this State the legislature have been careful in very many instances, when such has been the intent, to declare in terms that proof in a prescribed form, and by ex parte declarations, certificates or affidavits, should be conclusive; and it would be to interpolate, under the pretence of interpretation, a very significant word in the statutes, and greatly to extend its effect by implication, to hold that the affidavit in this case is made conclusive evidence of the facts stated, and that proof cannot be received to impeach it. There is nothing in the context of the statute to indicate that anything more was intended than to provide an easy method of making presumptive proof of an important fact which might not always be controverted, and which it would be expensive to prove by oral examination of living witnesses, and which could work no injury so long as the proof was not final and conclusive.
Statutes derogating from the common law, whether in respect to rules of evidence by which rights are determined, or the rights themselves, are not to be extended by implication beyond the evident intent of the legislature. The material fact, upon which any right and every power under the statutes rests, is the formal assent of the tax-payers; and and if those intrusted in questioning such assent, and having a legal right to do so, are to be shut up and concluded by the ex parte affidavit of a single individual, either an assessor or the town or county clerk, the statute should, in terms, or by an implication so strong as to exclude every other inference, so declare. *Page 196 
The acts to be verified by the affidavit are the acts in pais
of a majority of the tax-payers of the town; and the parties charged with the duty of making the affidavit, which it is claimed is to exclude all other proof, have no means of investigating the fact or to take or receive evidence of any kind. They can only judge from the face of the papers; but whether the individuals signing are the persons assessed, or the representatives in fact of the taxable property of the town, or whether the signatures are genuine or properly authenticated or authorized, or whether, as is claimed in this case, signatures have been detached from other papers and attached to the consents without authority, or whether there has been any fraud or irregularity vitiating the consents, they have no means or authority to investigate; and it cannot be intended, in the absence of an express provision to that effect, that it was the design that the public and all interested should be concluded by an affidavit, which, under the circumstances, can be nothing more than the expression of an opinion that, upon an inspection of the papers and a comparison of the same with the tax-rolls, a majority of the tax-payers had apparently consented to the issuing of the bonds.
Many instances might be cited, from the statutes, of evidence made conclusive in terms, but two will suffice to indicate the care of the legislature in this respect: 1 Revised Statutes, 173, section 22; 1 Revised Statutes, 69, act in relation to the Revised Statutes.
Other acts might be referred to in which affidavits or official certificates are required, and upon which action is based and procecdings had; but they are not, ordinarily, held conclusive evidence except to the extent declared by the statute. (Jackson
v. Morse, 18 J.R., 440.) A record or the transcript of a record of a conveyance was early made evidence, without further proof. (Act of 1801, 1 K. R., 478; 1 R.L., 370, § 5.) But it was not conclusive evidence, and might be impeached. (Jackson v.Schoonmaker, 4 J.R., 161; Jackson v. Hayner, 12 id., 469.) The Revised Statutes expressly *Page 197 
declares such records shall not be conclusive evidence, but that the same may be rebutted. (1 R.S., 759, §§ 16, 17.) This was done, as declared by the revisers, in conformity to the decision of the Supreme Court in the case cited. (5 R.S. [Edmonds' ed.], 345.)
By the election laws it has ever been the duty of the canvassers to adjudge and determine the result and certify the same, and the certificate has been the evidence of title to office of an individual declared to be elected; and yet, at all times, the right to go behind the certificate, and by extrinsic proof impeach the same, has been allowed. (People v. VanSlyck, 4 Cow., 297; Same v. Ferguson, 8 id., 102.) It was claimed, in those cases, that the action of the canvassers was judicial and that their judgment was conclusive, as well as that their certificate of the fact was incontrovertible; but the claim was overruled by the courts. The Revised Statutes differ somewhat from the prior statutes regulating elections, and declare intotidem verbis, "that the certificates of the board of canvassers, authorized to canvass the votes for any elective office, shall be evidence of the election of the persons therein declared to have been elected." (1 R.S., 118, § 17.) It has been held that the certificate was sufficient but not conclusive evidence of an election. (People v. Vail, 20 W.R., 12.) Judge BRONSON said, the court concurring, that as well upon principle as upon authority it was not conclusive.
No way is provided or means given by the act for questioning or vacating the affidavit of the assessor or town clerk, and it can only be attacked when, as in this case, some right is asserted or some direct action taken based upon the fact of which the affidavit is made evidence.
The title of the relators to the office of commissioners is not in issue. They were appointed in an independent proceeding, upon the application of twelve freeholders, and the validity of the appointment did not depend upon the assent of the tax-payers to the stock subscription. But the right of the relators to exercise the powers conferred upon them was dependent upon such assent, and, in asserting a right, the condition *Page 198 
upon which the right depended must be affirmatively shown by them. A sheriff or other officer whose title to office is not questioned, but whose right to legal process against another depends upon some extrinsic fact — as the possession of a writ for execution, or the like — must show the existence of such fact; and such fact is directly, not collaterally, in issue in such a proceeding. So here the facts relied upon by the relators are directly in issue, and must be affirmatively shown.
It then comes directly in issue, and the truth of the fact may be controverted, but in no other way can the action of the affiants and their conclusions, either of fact or of law, involved in the final result embodied in the affidavit, be judicially reviewed.
The operative effect of an affidavit of a compliance with the statute authorizing the creation of a municipal debt in aid of railroad corporations, when made and filed as required by law, has been incidentally before this court; but in no case has it been held that the affidavit was, under all circumstances, conclusive and incontrovertible evidence of the facts stated therein, except in the single case of People v. Mitchell
(35 N Y, 551), and then under a statute differing essentially from that under review, and which declared that "such proof shall be valid and conclusive to authorize such subscription," etc. (Laws of 1863, chap. 18, and an act amending the same, which declared that "such affidavits shall be valid and conclusive proof, in all courts and for all purposes, to authorize and uphold the respective subscriptions of the stock and the issue of bonds," etc. Laws of 1864, chap. 402.) The affidavits were held conclusive because of the peculiar and explicit language of the statute. By chapter 283 of the Laws of 1853, the commissioners, appointed pursuant to the act authorizing the village of Rome to subscribe to the capital stock of the Ogdensburgh, Clayton and Rome railroad, were required, before issuing the bonds of the village, to certify that individual subscriptions to the stock, which were made a condition precedent to a subscription by the *Page 199 
village, had been made in good faith and by persons of ability to pay, and this certificate was held conclusive, and an estoppel as against the village in an action upon the bonds by a purchaser in good faith and for value. (Bank of Rome v. Village of Rome,19 N.Y., 20.) This case has been the subject of comment, and distinguished from other cases as they have arisen, and its operation and effect practically restricted to the particular act under which the bonds in suit were issued, and to the case ofbona fide holders of the bonds for value. (Starin v. Genoa,23 N.Y., 439; People v. Mead, 24 id., 114.) The last case was again before this court, and is reported in 36 New York, 224, and it was there held that the affidavit, made and filed in pursuance of chapter 375 of the Laws of 1853, that the consents required by the act for the bonding of the towns mentioned therein had been obtained, was not conclusive of that fact. The act differs from the Rome act in this, that it does not in terms make the affidavits evidence of the fact. In other courts the question has been presented, but, with the exception of one or two recent cases in the Supreme Court of this State, it has been presented in actions upon bonds at the suit of bona fide holders for value, and the effect has been given to the affidavit claimed for it in these proceedings in favor of such holders. (Chute v.Winegar, 15 Wallace, 355.)
The interests of bona fide holders of the bonds of the town of Hancock are not involved in these proceedings. What would be the effect of the affidavit of the assessors, as evidence of the facts stated therein, in an action against the town by a bonafide holder of the bonds, I do not consider. These proceedings are not in behalf of such holders, and the question whether any, and, if any, how many, and which of the bonds had come to the possession of bona fide holders is left at least in doubt. Certainly no case is made showing that any particular individual is entitled to demand and receive the interest upon any one or more of these bonds, as a bona fide holder, within the cases ofBank of Rome v. Village of Rome or Chute v. Winegar
(supra). The commissioners, as relators, *Page 200 
stand upon their official right, and their averment that the statute has been complied with, and the requisite assents obtained. Whatever effect the bona fide holders of the bonds may claim for the affidavit, the relators are only entitled to claim for it the same effect that would be given to proof of the same fact by credible witnesses in the usual form. It is sufficient but not conclusive proof in their behalf.
The order, I think, should be reversed, and the motion denied.
All concur for affirmance, except ALLEN, J., dissenting, and CHURCH, Ch. J., not voting.
Order affirmed.