# RUSSEL B. BIDDLECOM, PLAINTIFF, *v.* PLINY NEWTON, AS SUPERVISOR OF THE TOWN OF ORLEANS, DEFENDANT.

*Proceedings for bonding towns — commissioners to issue bonds — annulling of proceedings — effect of, on powers of commissioners.*

On July 1, 1871, the county judge of Jefferson county, in proceedings instituted before him, under chapter 907 of 1869 and chapter 925 of 1871, appointed commissioners to issue bonds in aid of the construction of a railroad. The proceedings were removed by *certiorari* to this court, and on July 1, 1872, a judgment was entered affirming them. On February 24, 1873, the Court of Appeals reversed the judgment and directed the county judge to dismiss the application. After the issuing of the *certiorari*, the commissioners issued bonds to the amount of $80,000 and delivered them to the plaintiff, the agent and treasurer of the railroad company, who delivered in exchange therefor the stock of the company. Both the plaintiff and the commissioners knew of the pendency of the *certiorari*. The money necessary to pay the interest on the bonds for a certain time had been levied and received by the collector. In this action brought to recover the amount of certain coupons attached to the bonds, the money to pay which had been collected, the plaintiff produced an instrument signed by the persons appointed commissioners, reciting their appointment, and the fact that the proceedings had been declared void, and transferring to plaintiff all their right to the bonds as commissioners or otherwise.

*Held*, that the money having been collected for the specific purpose of paying the coupons, that if it was the duty of the defendant to pay it over to the holders of the coupons, he could not set up the invalidity and reversal of the proceedings before the county judge as a reason for not doing so.

That it was, in fact, his duty to pay the commissioners, and not the holders of the coupons.

That the commissioners had no right to, or interest in the fund except as commissioners, and while continuing to hold the office, and that they could not transfer their official rights or divest themselves of their official duty.

That immediately upon the decision of the Court of Appeals, they ceased to be such commissioners and to have any interest whatever in the fund.

That nothing passed to the plaintiff by the pretended transfer, and that plaintiff could not recover.

*Semble*, that where exceptions are taken during the trial, the direction of a verdict, subject to the opinion of the court, is error; that the consent thereto is a waiver of the exceptions.

MOTION by plaintiff for judgment on a verdict, ordered in his favor at the Jefferson Circuit, subject to the opinion of the court at General Term.

*J. F. Starbuck*, for the plaintiff. By special act of the legislature, under which the defendant received the money, the defendant is put in the place of, and subjected to the same liabilities, as the collector. The defendant cannot question the validity of the bonds or the right of the plaintiff to the money. (*People ex rel. Martin* v. *Brown*, 55 N. Y., 182; *Murdock* v. *Aikin*, 29 Barb., 67; *Merritt* v. *Willard*, 4 Keyes, 208; *Ross* v. *Curtiss*, 31 N. Y., 606.) The money was collected by tax to pay a debt of the town to the plaintiff, and the plaintiff has the same right to it that he would have had, had it been collected by the sheriff upon an execution against the town after judgment in his favor. (*Murdock* v. *Aikin*, 29 Barb., 67; 25 How., 594; *People* v. *Bd. of Police*, 63 N. Y., 623; *Lawrence* v. *Fox*, 20 id., 268; *Schermerhorn* v. *Vanderheyden*, 1 Johns., 140; *Pratt* v. *Adams*, 7 Paige, 615; *Clark* v. *Ely*, 2 Sandf. Chy., 166; 11 Ves., 22; 1 Johns. Chy., 129; *Gould* v. *The Town of Sterling*, 23 N. Y., 439; *Ross* v. *Curtiss*, 31 id., 606.) The tax-payers who paid this money are the only parties who could question the legality of the act of the board in raising it. (*Bellinger* v. *Gray*, 51 N. Y., 610; *Union Nat. Bank* v. *Mayer and others*, 51 id., 638; *Bk. of Commonwealth* v. *Mayer*, 43 id., 184.) But the tax-payers having voluntarily paid the money, are precluded from questioning the legality of the act of raising the same. (*People* v. *Williams*, 3 N. Y S. C. [T. & C.], 341.) The tax-payer could only attack the action of the board by bringing it up directly for review before the court. He could not permit the action of the board to stand unreversed and attack the action of the board of supervisors in a collateral proceeding or action. (*Mooers* v. *Smedley*, 6 Johns. Ch., 28; *Susquehanna Bk.* v. *Supervisors*, 25 N. Y., 312; *Mut. Benefit Life Ins. Co.* v. *Supervisors*, 3 Keyes, 182; *Haywood* v. *The City of Buffalo*, 10 N. Y., 5–34; *Hasbrook* v. *The Kingston Bd. of Health*, 3 Keyes, 480; *The People* v. *Suprs. of Westchester*, 57 Barb., 380; *Comins* v. *Bd. Suprs. of Jefferson County*, 13 Alb. Law Jour., 113; *Kilborn* v. *St. John*, 59 N. Y., 21; 19 Wallace, 187; 19 id., 655; *Guest* v. *Brooklyn*, 4 N. Y. Weekly Digest, 559.) The town has not returned the stock received in exchange for the bonds. (*Pendleton County* v. *Amy*, 13 Wall., 297; *Suprs.* v. *Schenck*, 5 id., 581; *Newton* v. *Keech*, 9 Hun, 361; *Town of Venice* v. *Woodruff*, 62 N. Y., 462.)

*L. H. Brown,* for the defendant.

SMITH, J. :

The order in this case, directing a verdict subject to the opinion of the court, was irregular. Exceptions were taken by each party to rulings admitting or excluding evidence. The defendant also excepted to the ruling of the court that there was no question of fact in the case, and to the refusal to submit to the jury the question whether the plaintiff was guilty of a fraud, in connection with the commissioners, in issuing the bonds, pending the *certiorari.* Irrespective of the merits of the exceptions, the order was erroneous. (*Cobb* v. *Cornish,* 16 N. Y., 602; *Purchase* v. *Matteson,* 25 id., 211; *Sackett* v. *Spencer,* 29 Barb., 180; *Bell* v. *Shibley,* 33 id., 610.)

Had both parties consented to such a disposition of the case at the time, their consent probably would have been an abandonment or waiver of the exceptions. (*Byrnes* v. *The City of Cohoes,* 67 N. Y., 204.) But there is no evidence of such consent on the part of the defendant; on the contrary, the case shows that his counsel excepted to the order by which the case was disposed of.

Upon the argument of this motion, however, the defendant makes no reference to the alleged irregularity, or to his exceptions, but he opposes the motion on the merits, contending that the court should order judgment in his favor upon the verdict. This, we think, is a waiver of the irregularity in the order, and of the exceptions taken by him, and the question is before us, which of the parties is entitled to judgment. (*Briggs* v. *Merrill,* 58 Barb., 389.)

The facts of the case, as we gather them from the evidence, are these : The plaintiff claims to be the holder and owner of certain interest coupons which were originally attached to and have been cut from certain instruments purporting to be bonds of the town of Orleans, issued in aid of the construction of a railroad, by commissioners appointed by the Jefferson county judge, in proceedings instituted before him, under chapter 907 of the Laws of 1869, and chapter 925 of the Laws of 1871. The plaintiff claims judgment for the sum of $8,050, the amount due on said coupons, with interest from November 25, 1876, the day on which the verdict was rendered. The order appointing the commissioners was made July 1, 1871.

The proceedings before the county judge were removed into this court by a writ of *certiorari,* which was sued out in September or October, 1871, and the return to which was filed in December, 1871. On July 1, 1872, a judgment of this court was entered affirming the proceedings before the county judge. From that judgment an appeal was taken to the Court of Appeals, and on the 24th of February, 1873, the latter court reversed the judgment of this court, and the proceedings had before the county judge, on the ground that a majority of the tax-payers representing a majority of the taxable property, did not join in the application for bonding, and the county judge was directed to enter an order dismissing the application. (*People ex rel. Irwin* v. *Sawyer,* 52 N. Y., 296.) Subsequently to the removal of the record by *certiorari,* and while the writ was pending, to wit, on the 3d of April, 1872, the commissioners issued bonds of the town to the amount of $80,000, and delivered them to the railroad company in exchange for the stock of the company, or script for stock, to the like amount. The company was represented in that transaction by the plaintiff, who was its treasurer, and who, as such, delivered the stock and received the bonds in behalf of the company. The bonds then issued are the same bonds to which the coupons in suit were attached. The commissioners and the plaintiff had notice of the pendency of the *certiorari* at the time. The stock or script has remained in the hands of the commissioners ever since, and nothing has been done by the town, or its officers, or agents, other than the commissioners, ratifying said transaction, or recognizing the validity of the bonds. On November 9, 1872, the commissioners reported to the board of supervisors that it was necessary to raise the sum of $8,154.75 to pay the interest on said bonds falling due in August, 1872, and February and August, 1873, and the supervisors levied that sum upon the taxable property of the town, and directed it to be collected and paid to the commissioners for interest on said bonds. The only interest falling due on the bonds in the years 1872 and 1873, so far as appears, was that which matured on the coupons in suit. The tax was collected, and the collector, Keech, was restrained from paying the money to the commissioners by an injunction order which was granted on the application of the present defendant. Subsequently the complaint in the

action in which the injunction was ordered, was dismissed, after a trial of the action, and thus the order was vacated. It appears that an appeal was taken from the judgment dismissing the complaint, but what disposition was made of it, or whether it is still pending, is not shown. In the meantime the money remained in the hands of the collector, and he wished to pay it to the party entitled to it in extinction of his liability and in exoneration of his bail. The plaintiff claimed it for the purpose above stated, and the defendant claimed that it should be paid to him, as supervisor, to the general credit of the town. In this state of things the legislature, on 26th April, 1876, passed an act (Laws 1876, chap. 178) by which Keech was authorized and directed to pay said money to the supervisor of the town of Orleans, and the supervisor was to receive the same, and Keech and his bail were thereupon to be discharged. Section 4 made it the duty of the supervisor, on receipt of the money, to keep and apply it toward the extinguishment of the next tax assessed on the town of Orleans after the receipt of said money. Section 5 is in the following words : " Nothing in this act contained shall be so construed as in any manner to affect the right of the holder of any coupons cut from any bonds issued by said town for railroad purposes, to maintain an action against said town to recover the money intended to be secured by such bonds and represented by such coupons ; and all the rights now by law existing in such holders to have such coupons paid out of the money mentioned in section 1 of this act shall continue in full force against said town. The supervisor of the town of Orleans by accepting the money mentioned in the first section of this act shall be deemed thereby to have assumed and accepted all the liabilities in regard thereto, that existed against the said John Keech before the passage of this act, and any and all remedies that might have been enforced against the said John Keech shall thereafter exist against the said supervisor and may be enforced against him."

The obvious purpose of this legislation was to relieve the collector and his bail from liability on his paying the money to the supervisor, without affecting the rights of the holders of the coupons therein mentioned. To that end the supervisor, on receiving the money, was put in the place of the collector, and was subjected to all the liabilities and remedies existing against the collector in favor of

the holder of the coupons. The provision of the fourth section that the supervisor should apply the money to the extinguishment of the next tax assessed on the town is not inconsistent with this construction. If the money should be so applied the only consequence would be that upon a recovery against the supervisor by a holder of the coupons, pursuant to section 5, the supervisor would be required to pay the amount out of any moneys in his hands belonging to the town not specially appropriated, or if not paid the amount could be collected of the town according to the provisions of the general statutes. (2 R. S., 475, §§ 106, 102, 103.)

What remedy, then, had the plaintiff against the collector? Could he have maintained an action against him for the amount of the coupons? Assuming that it was the duty of the collector to pay to the holder of the coupons, we think the plaintiff's counsel is correct in his position that the collector could not have set up the invalidity and reversal of the proceedings before the county judge as a reason why he should not pay over the money levied and collected for the specific purpose of paying the coupons. He could not question the legality of the bonds, and would have no discretion in that respect. (*Ross* v. *Curtiss*, 31 N. Y., 606 ; *People* v. *Brown*, 55 id., 180, 187 ; *People* v. *The Board of Police, etc.*, 63 id., 623 ; *First National Bank of Oxford* v. *Wheeler*, 17 Alb. L. J., 154 ; S. C., 6 N. Y. W. Dig., 28.)

But the duty of the collector was to pay to the commissioners and not to the holder of the coupons. His warrant directed him to pay to the commissioners or their successors in office. For the purpose of obviating the difficulty growing out of this consideration the plaintiff produced in evidence an instrument in writing, executed by the persons who were appointed commissioners, reciting their appointment in the proceedings before the county judge, and the fact that said proceedings had been declared void and dismissed and purporting to transfer to the plaintiff all their right to the fund, as commissioners or otherwise. It seems to us the attempted transfer was a nulllity. Assuming that the parties executing it were commissioners by valid appointment they had no right to, or interest in the fund, except as such commissioners, and while continuing to hold the office they could not transfer their official rights in respect to the fund or divest themselves of their official duty to receive it

and dispose of it as directed by law. Much less could they impose upon the collector a duty to pay the money to any person other than those directed in his warrant. But they were not duly appointed commissioners. It was a necessary consequence of the adjudication of the Court of Appeals that there were no such officers and there was no such office. At the time of the execution of the proposed transfer, therefore, the parties executing it were not authorized to act as commissioners, and as they had no interest in the fund as individuals the assumed transfer passed nothing and was void. In *Ross* v. *Curtis*, and the other cases above cited in connection with it, there was a breach of duty on the part of the supervisor, or other officer, to pay over as required by law, and, besides, there had been no adjudication declaring void the bonds or other demands, in payment of which the money was to be applied. The resort to the assumed transfer is an attempt to do indirectly what could not be done directly. The parties executing it could not have maintained an action, or a proceeding by *mandamus*, to compel the collector to pay over to them, except upon the assumption that they were commissioners, an assumption which the judgment of the court did not permit.

It results from these views that the plaintiff has no cause of action against the defendant; and in this there is no hardship as he was not only instrumental in procuring the bonds to be issued, but at that time, and when he invested his money in the coupons in suit, he had notice that the *certiorari* was pending.

Judgment of nonsuit should be ordered.

MULLIN, P. J., and TALCOTT, J., concurred.

Judgment of nonsuit ordered.