THE SHEPHERD'S FOLD, Respondent, *against* THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, Appellant.

(Decided January 4th, 1882.)

By an act of the legislature of 1871 (L. 1871, c. 269), the City and County of New York was required to levy and collect, in that and in each and every following year, a tax of a specified amount, and pay the same over to the plaintiff, a charitable corporation, to be applied to its pur-poses and objects. *Held*, that the amendment of 1874 to the constitution of the state (art. 8, § 10), which prohibited giving or loaning the credit or money of the state to or in aid of any association, corporation or private undertaking, with some exceptions not including the plaintiff, annulled the act of 1871, and that, even although the city thereafter con-tinued, without authority, to levy and collect the tax, the plaintiff could not maintain an action against the city to recover the amount.

APPEAL from a judgment of this court entered upon the verdict of a jury.

The facts are stated in the opinions.

*Wm. C. Whitney* and *Thomas Allison*, for appellant.

*Charles M. Marsh*, for respondent.

VAN HOESEN, J.—In 1871, the legislature passed an act which provided that the Board of Supervisors of the City and County of New York should, in the year 1871, and in each and every following year, levy and collect by a tax upon the taxable property of the City and County of New York, to be levied and collected at the same time and in the same manner as the contingent charges and expenses of the said city and county are levied and collected, the sum of five thousand dollars, and pay the same over to the Shepherd's Fold, to be applied to the purposes and objects of that institution.

This was a gift to the Shepherd's Fold, a gift made by the state. The City and County of New York had no interest in the matter, except that it was compelled to raise the money which the state gave away. Its officers were required to levy and collect the money at a certain time and in a certain way, but in so acting they were not performing any duty for the city, for the city had no right to the money, nor control over it. The question is raised, whose money was it that the state gave away ? The money was raised in a certain political division of the state, called the City and County of New York, but, as I have already said, not for any of the uses or purposes of that political division ; and the mere fact that some of its officers were directed to raise the money by taxation, and then pay it over, did not clothe the City and County of New York with any title to it. There were, of course, two parties to the gift, the donor and the donee ;· and the donor had the power, in this case, to bestow, and to compel the person charged with the duty of preparing and delivering the gift, to perform that duty. It matters not that the money was to be

paid over to the donee without ever coming into the actual possession of the donor. It was discretionary with the donor either to require the money to be paid to its treasurer, or to direct it to be paid by the collector immediately to the donee. Nor is it of any moment that only a small portion of the territory of the state was charged with the duty of raising the money. It is further to be observed that this is not a case in which the legislature directs a municipality to appropriate a part of the fund in its treasury to a particular purpose, but it is a case in which a particular territory is commanded to raise, at a designated time, and in a prescribed way, a certain sum for a purpose which, however commendable in itself, is quite distinct from those purposes for which the territory was organized as a political entity. The gift is, therefore, to be regarded as a gift by the state of its own money, raised in a particular locality.

The amendment to the state constitution, made in 1874, and known as section 10 of article 8, ordains that "neither the credit nor the money of the state shall be given or loaned to or in aid of any association, corporation, or private undertaking. This section shall not, however, prevent the legislature from making such provision for the education and support of the blind, the deaf and dumb, and juvenile delinquents, as to it may seem proper." This section annulled all acts of the legislature in conflict with it, and made illegal all appropriations to associations, corporations, or private undertakings, of the moneys of the state, except where the object of those appropriations was to support or to educate the blind, the deaf and dumb, and juvenile delinquents. The result is that the act of 1871 in favor of the Shepherd's Fold was not in force at the time this action was brought, unless the appropriation were for the support of some one of those classes for whose benefit the money of the state may still be given to private institutions. The purposes for which the Shepherd's Fold was instituted are shown by their charter to be, 1st. Receiving and adopting children and youth of both sexes between the ages of twelve months and fifteen years, who are orphans, or otherwise friendless; 2nd. To receive, for training and edu-

cation, such children of poor clergymen as may be eligible, and be approved by the trustees of the Shepherd's Fold; 3rd. To receive other children and youth for education and training, to such extent as, in the judgment of the trustees, may be expedient. It is said that the act of 1868 authorizes police magistrates to commit to the Shepherd's Fold "orphans and friendless children;" and upon that ground the counsel for the plaintiff contends that the appropriation is valid. But that argument will scarcely avail until the counsel has satisfied us that orphans and friendless children are always and necessarily juvenile delinquents, or blind, or deaf and dumb. The act of 1871 gave the money to the Shepherd's Fold for its "own purposes and objects;" and those purposes and objects are not such as the constitution excepts from its inhibition.

There has not been, therefore, any constitutional warrant for the imposition of this tax upon the City and County of New York since the amendment to the constitution, which took effect on the first of January, 1875. Since that time, nevertheless, the local authorities of the city and county have gone on, year after year, in 1875, in 1876, and in 1877, to levy and collect the tax in conformity with the requirements of the act of 1871; and the question to be decided, is, what is to become of the money so collected? If the Shepherd's Fold should attempt to compel the levying and collection of the tax, it would fail, because there is no valid law which gives it a right to the money, and of course there would be no remedy, if the supervisors should obey the constitution, and refuse to carry the act of 1871 into execution. But as the supervisors have levied and collected the tax, and as they have the money in their hands—money which they collected solely for the use and benefit of the Shepherd's Fold,—have they now the right to call in question the title of that institution to the money?

I think they have that right. The city authorities are not in the position of agents who have received money belonging to their principal with instructions to apply it to a particular purpose. If they were so situated, they could not question the right of the person, to whom the principal had ordered the

money to be paid. All the cases on which the Shepherd's Fold relies; *Ross* v. *Curtiss* (31 N. Y. 606); *Murdock* v. *Aikin* (29 Barb. 59); *People* v. *Brown* (55 N. Y. 180); and *First National Bank* v. *Wheeler* (72 N. Y. 201); were decided upon the principle that an agent or trustee receiving money to be paid over to a cestui que trust, is not to be permitted to dispute the right of the party for whose benefit he received it.

But those decisions are inapplicable to the facts of this case. The amendment to the constitution which took effect on the first of January, 1875, annulled, as I have said, the act of 1871. From that time, the state did not order the tax to be levied or collected. The tax was unlawful. The supervisors had no right to levy it. The state had no right to require the supervisors to collect it. The money, when collected, did not belong to the state. The Shepherd's Fold was no longer the beneficiary of the state, for the constitution forbade the state to be its benefactor. As there was no authority for the levying or the collection of the tax, so there was no way in which the Shepherd's Fold could acquire a right to the money. The statute which originally created its right was repealed before the tax for 1875, or for the following years, was levied. The Shepherd's Fold, therefore, was not the cestui que trust for whose benefit the city officers received the money.

The Shepherd's Fold claims the money because, under a statute which had been repealed before the money was collected, it would have had a right to the money. The argument is, that the city officers were agents of the state, in levying and collecting the money, and being such agents, they cannot question the orders of their principal. The answer is, that the state was not the principal, that it gave no orders to levy and collect this tax; that the city officers were acting unlawfully in making the levy; that the Shepherd's Fold was not, after January 1st, 1875, the beneficiary of the state; that the money did not belong to the state, having been collected without its authority; that the city's officers, or the city itself, did not occupy the position of a disbursing agent; and, therefore, the city is not estopped from disputing the right of the Shepherd's Fold to the money. The case is this; A. unlawfully

collects money for the avowed purpose of paying it to B., to whom it does not belong; can B. recover from A. the money so collected? The answer is, that B. cannot recover.

The judgment dismissing the complaint as to the claim for the years 1875, 1876, 1878, and 1879, is affirmed. The judgment in favor of the plaintiff for the tax of 1877 is reversed, with costs to the defendant. There must be a new trial as to the claim for the tax of 1877.

J. F. Daly, J.—When the moneys claimed in this action were raised by tax in this city in 1875 and subsequent years, the act of the Legislature, under which the city officers proceeded to levy such taxes (L. 1871, c. 269), had been, in effect, annulled by the new provision of the state constitution which took effect January 1st, 1875, and has been ever since in force. The provision in question declares that neither the credit nor the money of the state shall be given or loaned to or in aid of any association, corporation, or private undertaking; but the legislature is not prohibited from making provision for the education and support of the blind, the deaf and dumb and juvenile delinquents. The object of the Shepherd's Fold does not embrace any of the purposes enumerated, and the annual donation to that corporation of $5,000, under the above mentioned act of 1871, is a gift of state money which the new constitution expressly prohibited. The moneys for the purpose raised by the city officials in 1875, and afterwards, were not only levied and collected without authority of law; but in direct violation of it. This distinguishes the case from *First National Bank* v. *Wheeler* (72 N. Y. 201); *People ex rel. Martin* v. *Brown* (55 N. Y. 180) and *Ross* v. *Curtiss* (31 N. Y. 606); holding that town officers, who have collected and who hold moneys raised by tax under valid subsisting statutory enactments imperatively requiring them to collect and pay over such moneys to the holders of town securities or contracts, for interest or principal due thereon, cannot set up against such holders the invalidity of their securities or contracts. In this case the Shepherd's Fold has no contract to enforce, and no claim nor cause of action except that which grows directly out

of a statute which is abrogated and out of the levying and collecting of the tax by the municipal officers; and that proceeding being without authority, no legal demand accrues to plaintiff from it. The judgment in favor of plaintiffs should be reversed, and a new trial ordered with costs to abide event.

Judgment reversed and new trial ordered, with costs to abide event.