THE BOARD OF SUPERVISORS OF THE COUNTY OF SENECA, Appellant, *v.* WALTER H. ALLEN et al., Respondents.

Under the provisions of the acts of 1875 and 1879 (Chap. 605, Laws of 1875, chap. 213, Laws of 1879), in relation to the county treasurers of the counties of Monroe and Seneca, the compensation of such officers is limi-

ted to the salaries fixed by the boards of supervisors of said counties as prescribed by the acts; they are authorized to retain the commissions allowed on State taxes, but only for the benefit of their respective counties, not for their own use.

The said act of 1875 is not violative of the provision of the State Constitution (Art. 3, § 18) prohibiting the passage of a private or local bill, increasing or decreasing the fees, percentages, or allowances of public officers during their terms; it does not in terms apply to the county treasurers in office at the time of its passage, and it is to be presumed the legislative intent was to make it applicable only to future treasurers.

Nor is said act violative of the constitutional provision (Art 3., § 23), directing the legislature to confer by general laws upon boards of supervisors additional powers of local legislation and administration, as said provision contains nothing prohibitory.

Said act does not contravene the provision of said Constitution (Art. 3, § 16) prohibiting the passage of a local or private bill, embracing more than one subject and requiring that to be expressed in the title.

The title of the act of 1879 also answers the requirements of said constitutional provision.

The act of 1879 does not appropriate money of the State and so is not within the provision of said Constitution (Art. 1, § 9), requiring a two-thirds vote, where an act appropriates public moneys for local purposes.

Where a treasurer of one of the counties named refused to pay over the commissions on State taxes, in an action upon his official bond, *held*, that having received the fund under and by virtue of said acts, he could not set up their invalidity and on that ground claim to retain it for himself as against the party for whose benefit he received it.

(Argued May 1, 1885; decided October 6, 1885.)

APPEAL from judgment of the General Term of the Supreme Court, in the fourth judicial department, in favor of defendants, entered upon an order made May 30, 1884, which denied a motion for a new trial and directed judgment on an order dismissing plaintiff's complaint on trial.

This action was brought upon the official bond given by defendant Allen, as county treasurer of Seneca county, to recover certain commissions on State taxes which had been received by said treasurer and not paid over or accounted for.

*William F. Cogswell* for appellant. The General Term was in error in holding that the compensation of the county treasurer, as fixed by the board of supervisors, was not the

whole compensation to which he was entitled, and that in addition thereto he might receive one per cent for receiving and paying over the State tax. (Laws of 1875, chap. 605, §§ 7, 8.) The act of 1875 is not a private or local bill, and if it were, its constitutionality would be saved by the doctrine that it did not apply to the county treasurers then in office, and it would lawfully operate upon the compensation of future county treasurers. (*Conner* v. *Mayor, etc.,* 5 N. Y. 285; *Williams* v. *People,* 24 id. 405; *Tift* v. *City of Buffalo,* 82 id. 204; *Kerrigan* v. *Force,* 68 id. 381.) If the act of 1875 is a local bill, there is but one subject and that is fully expressed in the title. (*People, ex rel.* v. *Briggs,* 50 N. Y. 553.) It did not appropriate public money for local purposes. (§ 9 of art. 1 of the Constitution; *Englishbe* v. *Helmuth,* 3 N. Y. 294; *Matter of Tax Payers of Kingston,* 40 How. Pr. 444.) Defendant has received this money by virtue of his office of county treasurer, and it is none of his business to raise the question as to whether they came into his hands as such, rightfully or otherwise. It is enough for him that he has received money "for the benefit of his county." (*People* v. *Williams,* 3 T. & C. 338; *First Nat. Bk.* v. *Wheeler,* 72 N. Y. 201; *Ross* v. *Curtiss,* 31 id. 606; *People* v. *Mead,* 36 id. 224.)

*Charles A. Hawley* for respondents. Chapter 605 of the Laws of 1875 violates section 18 of article 3 of the Constitution because it is a local bill and changed the fees and percentages and allowances of the county treasurers then in office. (*People* v. *Banks,* 67 N. Y. 574; *Shanly* v. *Brooklyn,* 30 Hun, 398; *People* v. *Hills,* 35 N. Y. 449; *People* v. *O'Brien,* 38 id. 193; *Gaskin* v. *Meek,* 42 id. 186; *People* v. *Allen,* id. 378; *People* v. *Supervisors,* 43 id. 10; *People* v. *Com'rs,* 54 id. 276; *Matter of Church,* 92 id. 1; *Healy* v. *Dudley,* 5 Lans. 125; Smith's Commentaries, 419.) The subject of the act is to be determined by its provisions and not by its title. (*People* v. *McCann,* 16 N. Y. 58.) It is not sufficient to state in general terms in the title of a local bill that it is an act to amend a certain chapter of the laws of a previous year, when

such chapter consists of various sections subject to distinct amendments. (*People* v. *Supervisors,* 43 N. Y. 10 ; *People* v. *Hills,* 35 id. 449 ; *People* v. *O'Brien,* 38 id. 193.) The object and subject-matter of the act was to authorize the comptroller to pay over, and the treasurer to retain for the benefit of his county, certain public moneys, the property of the State. (*In re Paul,* 94 N. Y. 497.) This act was void because it did not receive the assent of two-thirds, but was passed as a three-fifths bill. (Laws of 1879, chap. 213.) On this subject the printed statute is presumptive evidence and the original act conclusive. (*People* v. *Com'rs,* 54 N. Y. 276 ; Laws of 1842, chap. 305.) It appropriated public moneys for local purposes. (*Matter of Kingston,* 40 How. Pr. 444; *People* v. *Develin,* 33 N. Y. 269; *People* v. *Home Ins. Co.,* 92 id. 335 ; *Supervisors* v. *Otis,* 62 id. 88; *People* v. *Allen,* 42 id. 378; *People* v. *Com'rs,* 54 id. 276 ; *Supervisors* v. *Otis,* 62 id. 88.)

RAPALLO, J. The act of 1875 (Chap. 605), and that of 1879 (Chap. 213), construed together, clearly indicate an intention to limit the compensation of the county treasurers of Monroe and Seneca counties to the salaries authorized by the sixth section of the act of 1875, and to take from them the percentages to which they were formerly entitled on State as well as on other funds.

The sixth section of the act of 1875 provides that such treasurers, whether elected or appointed, shall receive for their services as such treasurers an annual salary to be fixed by the board of supervisors, and that they shall not receive to their own use any interest, fees or other compensation for their services as such treasurers, except in proceedings for the sale of land, etc.

Although the money received by them for State taxes is collected for the benefit of the State, the county treasurers receive it by virtue of their office of county treasurer. They are county, and not State officers, and in receiving and depositing the State money, they discharge in behalf of the county an obligation resting upon it.

Under the Revised Statutes county treasurers were entitled to retain to their own use, as compensation for their services, a commission of one per cent on all moneys received and paid out by them.   (1 R. S. 370, § 26.)

By chapter 189 of the Laws of 1846, the several county treasurers of this State were to receive for their services, instead of the fees then allowed by law, such compensation as should be fixed by the boards of supervisors of their respective counties, not exceeding one-half per cent for receiving, and one-half per cent for disbursing, the moneys received and disbursed, and in no case to exceed the sum of $500 per annum. This act was not applicable to the counties of New York and Kings.

There can be no doubt that by this act the boards of supervisors were empowered to fix the compensation of county treasurers for receiving and paying out State as well as county funds.

The act of 1846 was amended by chapter 110 of the Laws of 1871, by providing that, in addition to the compensation fixed by the boards of supervisors, county treasurers should be entitled to retain a commission of one per cent on every dollar belonging to the State which they should receive and pay over; but in no case to exceed the sum of $500, and that the act should not apply to the counties of New York, Kings, Albany, Otsego, Onondaga, Erie and Westchester.

The act of 1875 applied to· the county treasurers of the counties of Seneca and Monroe only. It provided for their compensation by an annual salary, and that they should not receive *to their own use* any other compensation for their services as such treasurers.   It did not in terms refer to the one per cent commission allowed under the Revised Statutes, and the acts of 1846 and 1871, upon moneys collected for the State, but simply provided that no compensation in addition to their salary should be received by county treasurers *for their own use* for their services as such, and repealed all acts, parts of acts and special laws inconsistent therewith.   If any doubt could be entertained as to the applicability of this act to

commissions on State moneys, such doubt is dispelled by reference to the act of 1879 (Chap. 213), which amends the act of 1875, applicable to Seneca and Monroe counties, by adding section 12, declaring that "nothing in this act contained shall be construed as preventing the treasurers of the said counties from retaining *for the benefit of their counties* respectively the same compensation for receiving and paying the money belonging to the State every year as that allowed by chapter 110 of the Laws of 1871; but the comptroller is hereby authorized to allow to the said treasurers *for the benefit of their respective counties*, on the State taxes heretofore and hereafter received and paid over by them, where not already allowed, the compensation provided by said chapter 110."

These enactments, relating to the same subject, should be construed as if contained in the same act, and in fact the provision last cited is incorporated by amendment in the act of 1875. Thus construed they are very plain, and show that their intention was not to relieve the State of the burden of the commission of one per cent which, under the Revised Statutes and the acts of 1846 and 1871, was chargeable on the quota of the State taxes collected in each county, but simply to preclude the treasurers of the counties of Monroe and Seneca from retaining such commission to their own use, and to confine them to the salaries paid by the boards of supervisors, at the same time authorizing them to retain or receive such commission for the benefit of their respective counties. In this manner the counties are indemnified, in part, for the salaries paid to their county treasurers. The practice of the principal officers of the State in leaving undrawn, or paying over to the county treasurers so much of the funds collected for the State as would cover their commissions, is entirely in accord with this construction. It simply recognizes the liability of the State to bear these commissions, but does not affect the question whether they are to go to the counties or to the treasurers for their own use.

Our conclusion in this respect brings us to the questions

raised by the respondents as to the constitutionality of the acts of 1875 and 1879.

The first objection is that the act of 1875 is a local bill and violates section 18 of article 3 of the Constitution which prohibits the passage of any private or local bill increasing or decreasing fees, percentages or allowances of public officers during the term for which such officers are elected or appointed.

Passing the question whether the act in question is a private or local bill, it is a sufficient answer to this objection that it did not in terms apply to county treasurers in office at the time of its passage, and as it might lawfully operate to affect the compensation of future treasurers, we must presume that such was the intention. (*Kerrigan* v. *Force*, 68 N. Y. 381.) Although it did not affect treasurers in office in 1875, it is not, for that reason, invalid as to the defendant, whose term did not begin until January 1, 1879.

Section 23 of article 3 is next referred to. This section directs the legislature by general laws to confer upon boards of supervisors such further powers of local legislation and administration as the legislature may from time to time deem expedient, but it contains nothing prohibitory.

The act does not contravene section 16 of article 3. All its provisions relate to the treasurers of the counties of Seneca and Monroe, and the subject is sufficiently embraced in the title. The provisions authorizing the supervisors to designate the banks in which such treasurers shall deposit the State moneys, and directing such banks to give bonds, pay interest and keep accounts with the State treasurer, are all parts of the system established by the act for the custody and disposition of the State funds collected by the treasurers designated in the title of the act, and are connected with the same subject.

The title of the act of 1879 is, in our judgment, sufficient. It not only refers to the act of 1875, but it recites the title of that act, which expresses the subject of the act amended, and the amendment is simply declaratory of the meaning of that act.

It is further claimed that the act of 1879 appropriates

public money for local purposes, and consequently, under section 9 of article 1 of the Constitution, required a two-thirds vote.

The act does not appropriate any money of the State. It simply directs that the commissions which, under former laws, were payable to the county treasurers as their own compensation, be retained by or allowed to them for the benefit of their respective counties instead of being retained by them for their own benefit. This money belonging to the counties, having come under the control of the State treasurer by being deposited to his credit, he was authorized to allow the same to the treasurers for the benefit of their respective counties. The money in question in this action was not collected until after the passage of the act.

But beyond these answers to the objections raised, is the fundamental one that the defendant having received these funds by virtue of the act which directed that they should be allowed to him for the benefit of his county, he cannot set up the invalidity of the act under which he received the money, and on that ground claim to retain it for himself, as against the party for whose benefit he received it. (*Ross* v. *Curtiss*, 31 N. Y. 606; *People* v. *Mead*, 36 id. 224; *First Nat. Bk.* v. *Wheeler*, 72 id. 201.)

The judgment should be reversed and a new trial ordered costs to abide the event.

All concur.

Judgment reversed.