GRIFFITH JONES, Respondent, v. HENRY W. CHAMBERLAIN et al., Impleaded, etc., Appellants.

The provision of the state Constitution (art. 3, § 20), declaring that every law imposing a tax, shall distinctly state the tax and its object, and that "it shall not be sufficient to refer to any other law to fix such tax or object," applies only to a general tax upon all the property of the state; it has no application to a local tax upon a particular section.

The bounty taxes authorized by chapter 15 of the Laws of 1863, were not general but local, and were authorized to be imposed, not by the legislature, but by the citizens of a town

Such taxes, therefore, were neither within the letter or the spirit of said constitutional provision

The effect of the provision in each of the bounty acts of 1863, 1864 and 1865 (chaps. 15, 184, 393, Laws of 1863; chaps. 8, 72, Laws of 1864; chaps. 29, 226, 617, Laws of 1865), declaring that "all the provisions of law," existing at the time of the passage of the act, for the assessment, collection, levying and enforcement and collection of taxes, shall apply to the taxes provided for by the act, so far as the same are consistent

with its provisions, was to incorporate into the said statutes every provision of the then existing laws relating to the enforcement and assessment of taxes.

The said acts, therefore, authorized and required a return to the state comptroller of the taxes unpaid, and an enforcement thereof by sale as other taxes are enforced.

(Argued March 1, 1888; decided April 10, 1888

APPEAL from judgment of the General Term of the Supreme Court, in the fifth judicial department, entered upon an order made October 7, 1885, which affirmed a judgment entered upon a verdict in favor of plaintiff.

The nature of the action and the facts are sufficiently stated in the opinion.

*Mr. Waring* for appellants. The power to sequestrate property, and particularly land, must be expressly conferred; it cannot rest in anything short of a necessary implication. (*Sharp* v. *Spier*, 4 Hill 76, 84, 85; *Bouton* v. *City of Brooklyn*, 15 Barb. 382; *Whitney* v. *Thomas*, 23 N. Y. 281.) The only implication that can legitimately arise from a statutory term is such as its fair and natural signification, taken in connection with the subject-matter, will warrant. (Potter's Dwarris on Statutes, 146; Rule 21, 144; Rule 9, 145; Rule 18; *Bouton* v. *City of Brooklyn*, 15 Barb. 375, 382.) The power of a public officer to sell the land of a private individual can arise only from the express language of some statute, or by necessary implication from it. (*Thatcher* v. *Powell*, 6 Wheat. 119; *Beatty* v. *Knowles*, 4 Pet. 152; *Sharp* v. *Spier*, 4 Hill 76; *Sherwood* v. *Reade*, 7 id. 431; *Bunner* v. *Eastman*, 50 Barb. 639; *Brooklyn Com'rs* v. *Armstrong*, 45 N. Y. 234; *In re Amsterdam Com'rs*, 96 id. 351; Blackwell's Tax Titles, 45, 49, 83, 88.) The acts providing for taxes for bounties and kindred purposes are void, as being in contravention of section 13, article 7 of the Constitution of this state, which provided as follows: "Every law which imposes, continues or revives a tax shall distinctly state the tax and the object to which it is to be applied, and it shall not be sufficient to refer to any

other law to fix such tax or object. (*People* v. *Supervisors,* etc., 52 N. Y. 556 ; *Parker* v. *Supervisors, etc.,* 13 N. E. Rep. [No. 4] 308.) Had it been intended by the people to limit the application of the section in question, and its companion section (§ 8), to imposition of taxes for purely and distinctively state purposes, that is, to cases where the proceeds were to be paid into the treasury of the state, it would have been so stated. (Art. 7, Cons. N. Y.; *People* v. *Flagg*, 46 N. Y. 401.) If land be sold and conveyed for an aggregate of several items of taxes, and any one of them is invalid or unauthorized, that fact vitiates the whole sale. *People* v. *Hagadorn*, 104 N. Y. 516 ; *Shattuck* v. *Bascom*, 105 id. 39.) The assessment of the land taxation and return as non-resident, were wholly unauthorized and void, as were all the subsequent proceedings based thereon. (*Mygatt* v. *Washburn*, 15 N. Y. 316 ; Rev. Stat. § 2, art. 1, tit. 2, chap. 13, part 1 ; Laws of 1851, chap. 176, § 1 ; *Stewart* v. *Crysler*, 100 N. Y. 378.) The sale and conveyance by the comptroller to the plaintiff were each void, because the highway taxes of each of the years, 1863, 1864 and 1865, were carried out on the assessment-roll as being in road district No. 16, based upon warrants issued to and and returned by the overseer of that district, prepared by the commissioners of highways, when in fact, and during this whole period the lot was in district No. 15. (1 R. S., art. 1, tit. 1, chap. 16, § 1, subd. 5.) The presumption that attaches to a comptroller's deed is not conclusive, but must give way when confronted by proof of any fact that would destroy the efficacy of the deed. (*Cleveland* v. *Boerum*, 27 Barb. 252 ; *Whitney* v. *Thomas*, 23 N. Y. 281 ; *Beekman* v. *Bigham*, 5 id. 366 ; *Hickox* v. *Tallman*, 38 Barb. 608 ; *Striker* v. *Kelley*, 2 Den. 323 ) The statute does not absolutely require the highway commissioners to apportion the road districts every year, but only when they deem it necessary. Presumptively, then, the apportionment made in 1859, stood unchanged till after 1865. (*Meyers* v. *Halleck*, 2 Robt. 284 ; *In re Phillips*, 60 N. Y. 16 ; *Beckwith* v. *Whalen*, 65 id. 322 ; *Harrison* v. *Lowrie*, 49 How. 124 ; *Banker* v. *Banker*, 63

N. Y. 409; *Murphy* v. *Orr*, 32 Ill. 489; *Lilly* v. *Waggoner*, 27 id. 395; *Wylde* v. *Northern R. R. Co.*, 53 N. Y. 156, 164.) The jurisdiction of an overseer is coterminous with the boundaries of his district· He has no power or authority outside of it. (Rev. Stat., art. 1, tit. 1, chap. 16, part 1, § 6; *People* v. *Supervisors of Chenango*, 11 N. Y. 563; *Darwin* v. *Strickland*, 57 id. 493; *Dike* v *Lewis*, 4 Den. 237; 2 Barb. 344; *Tallman* v. *White*, 2 Com. 66; *Thompson* v. *Burhans*, 61 N. Y. 52; *In re N. Y. C.*, 90 id. 342.) Hill's actual occupancy of lot one was equally and necessarily an actual occupancy of lot three, as much so, and as characteristically so, as if the imaginary line that for certain purposes divides the parcels, had no existence, and the two were included within a common boundary. (*Comstock* v. *Beardsley*, 15 Wend. 348; *Smith* v. *Sanger*, 4 Com. 577, 579; Code of Civil Pro. § 370, subd. 3; *Jackson* v. *Esty*, 7 Wend. 148; *Bush* v *Davison*, 16 id. 550; *Leland* v. *Bennett*, 5 Hill 286.) His waiver of notice was utterly nugatory. (*Jackson* v. *Esty*, 7 Wend. 148; *Curtiss* v. *Follett*, 15 Barb. 344, 345 )

*J. F. Parkhurst* for respondent. The land was properly assessed as non-resident in the years 1863 and 1864, and the refusal of the court to hold that the comptrollers's deed was void by reason of Nelson Hooker's relation to the premises in 1863 and 1864, was not error. (Waterman on Specific Performance of Contracts, § 186; 1 Edm. Stat. 361, § 2; *Whitney* v. *Thomas*, 23 N. Y. 285.) The objection taken by defendant's counsel, that in the years 1863, 1864, 1865, this land was situated in road district No. 15, and should have been assessed for highway labor, and returned delinquent in that district, and not as in district No. 16, cannot avail the defendants, because there was no proof made of the fact. (Banks' Ed. of Rev. Stat. 1213, § 1, subd. 5.) The presumption is otherwise, and is in favor of the regularity of the act of the commissioner and the subsequent acts of the other public officers based upon it. (*Hartwell* v. *Root*, 19 John. 345; *People* v. *Carpenter*, 24 N. Y. 86; *Leland* v. *Cameron*, 31 id. 115; *Wood* v. *Morehouse*, 45 id. 369; *Doughty* v. *Hope*,

1 Com. 79; Laws of 1855, chap. 427, § 65, as amended by Laws of 1860, chap. 209; Saxton on Tax Laws of New York, 225, § 23.) The labor assessed upon non-resident land may be applied by the commissioner to any part of the town without reference to district lines. (Edm. Stat. 468, § 1; R. S., art. 2, part 1, chap. 16, § 25.) The objection that there was no law in this state authorizing the comptroller to sell land for non-payment of bounty taxes, was not well taken. (*Town of Gilford* v. *Supervisors of Chenango County*, 3 Kern. 143; *Brewster* v. *City of Syracuse*, 19 N. Y. 118; *People* v. *Mayor, etc.*, 4 Com. 419.) Section 20, article 3 of the Constitution, which provides that "every law which imposes, continues or levies a tax, shall distinctly state the tax and the object to which it is to be applied," refers only to general taxes for state purposes. (*In re McPherson*, 104 N. Y. 320; *People* v. *Fire Ass'n. of Phila,*, 92 id. 311; *Sun Mut. Ins. Co.* v. *City of New York*, 5 Sandf. 10; *People* v. *Moring*, 3 Abb. Ct. of App. Dec. 539; *In re Ford*, 6 Lans. 97; *Darlington* v. *Mayor, etc.*, 31 N. Y. 164, 186; *Guest* v. *City of Brooklyn*, 8 Hun, 97; *People ex rel., etc.* v. *Havemeyer*, 4 T. & C. 380.) The bounty taxes under which the sale was made, were local taxes imposed by the board of supervisors. (Chap. 15, Laws of 1863; chap. 8, Laws of 1864; chap. 72, Laws of 1865; chap. 226, Laws of 1865; *Mut. Ins. Co.* v. *City of New York*, 5 Sandf. 10; *People* v. *Supervisors, etc.*, 17 N. Y. 241.) The three statutes, chapters 184 and 393 of 1863, and 226 of 1865, "distinctly state the tax," within the requirements of the Constitutional provision and are valid. (*Hurlbut* v. *Banks*, 1 Abb. N. C. 157, 172; *People* v. *Home Ins. Co.*, 92 N. Y. 334; *Guest* v. *City of Brooklyn*, 8 Hun, 98; *In re Ford*, 6 Lans. 97.) Chapter 8, Laws of 1864, section 22, and chapter 72 of 1864, furnish ample authority to impose the taxes proven. (*Townsend* v. *Mayor, etc.*, 16 Hun, 368; affirmed 77 N. Y. 542.)

Danforth, J. The plaintiff sought by this action to recover 359 acres of land situate in the town of Allegany, Cattaraugus county, known as lot 3, section 1, township 1,

range 5, in the Holland Company survey, and for an accounting for oil taken therefrom by the defendants and pending the action an injunction and receiver.

The defendant, the Bradford Oil Company, answered, setting up a general denial of the allegations of the complaint. The other defendants, Fay and Chamberlain, put in a similar answer. The issues were brought to trial before a jury, who, by their verdict, found the plaintiff to be owner in fee of the lands described in the complaint, and entitled to recover the possession thereof. Exceptions taken upon the trial were ordered to be heard in the first instance at the General Term. Upon argument in that court the exceptions were overruled and judgment ordered upon the verdict, and "that plaintiff also recover of said defendants his damages for withholding the same, and that defendants account to the plaintiff for the rents, issues and profits of said lands and the oil and other valuable products taken therefrom, and for the value thereof, such accounting to be had before a referee to be appointed by the court."

It also appointed a receiver of the property involved in this action, and of the rents, issues, profits and products thereof, and of the damages for withholding the same with the usual powers and duties.

It was also ordered and adjudged that the defendants assign, transfer and deliver to said receiver, all the real and personal property involved in this action, and all the rents, issues, profits, oil and products therefrom, and the damage for withholding the same, and all oil certificates or other papers, books and writings relating thereto, and the receiver was authorized and empowered to sue for, collect and receive the same, and continue the business of oil producing, and upon notice to the plaintiff's attorney sell the oil or any part thereof. No appeal was taken by the Bradford Oil Company, but Henry W. Chamberlain, Louis G. Chamberlain and Ella V. Gleason, devisees and executors of George Chamberlain, deceased, and Frederick Fay, appealed from so much of the

judgment "as awarded the possession of the premises in dispute to the plaintiff." The plaintiff claimed title under a deed from the comptroller of the state, dated January 22, 1874, and proved that the defendants were in possession of the premises at the time of the commencement of the action. On the part of the defendants it was made to appear that the sale of lot three, in pursuance of which the comptroller's deed was executed, was made on the 23d day of September, 1871, for the following unpaid taxes, viz. :

| | |
|---|---:|
| 1863, state and county tax........................... | $8 95 |
| 1863, highway tax................................. | 2 96 |
| 1864, state and county tax....................  ... | 10 94 |
| 1864, highway tax................................. | 2 31 |
| 1864, bounty tax.................................. | 23 68 |
| 1865, state and county tax.......................... | 12 79 |
| 1865, highway tax................................. | 5 80 |
| 1865, school tax.................................. | 12 22 |
| 1865, bounty tax.................................. | 16 11 |

It was urged as a defense to the action (1) that the proceedings prior to the sale and conveyance were illegal and insufficient to show compliance with the statutes in regard to such matters, and, (2), that if those proceedings were in every respect regular, the plaintiff failed to consummate his title by not serving the statutory notice to redeem upon one Hill, who, the defendants claimed, was in the actual occupancy of the premises at the time specified in the statute for serving such notice. The question raised by the second of these propositions was submitted to the jury with direction that in case they "found from the evidence that Hill was not in the actual occupancy of the land, or some part of it, on that day, then their verdict should be for the plaintiff; but that in case they found he was in the actual occupation of the whole or part of the lot on that day, they should render a verdict for the defendants." There was evidence from both parties upon this question. That Hill did not live upon the lot but resided elsewhere with his family, was a conceded fact. He resided

upon lot one, and the argument of the appellants is to show that as lot one adjoined lot three (the lot in dispute) the two lots were to be regarded, not separately, but as one. Such might be the inference under certain circumstances. Land may be in the possession or occupancy of a person within the meaning of a statute, although he resides elsewhere. But there was evidence showing not only that Hill did not live on lot three, but also that he in no sense occupied or possessed it. Such property as he at one time had upon it he removed, and there was not only an actual abandonment of any possession which he before had, but there was an intent to abandon and altogether quit and forsake it. Indeed, the case states that the testimony given tended to show that Hill, before the 23d of September, 1873, in anticipation of the conveyance by the comptroller, entirely abandoned the property. If there was evidence tending to any different conclusion, it was not uncontroverted, and we think the learned trial judge committed no error in submitting the question to the jury. Such was the opinion of the learned court at General Term, and concurring in that conclusion the verdict of the jury must be deemed conclusive upon that point in favor of the plaintiff.

Under the other proposition it is argued, by the learned counsel for the appellants, that there was no authority for the return of the lot in question for the bounty taxes of the year 1864 or 1865, by the county treasurer to the comptroller, or for the sale or conveyance by the comptroller for the default in payment.

This question was presented to the trial court upon a motion for nonsuit, but does not appear to have been brought to the attention of the General Term. We think the point is not well taken. The acts referred to by the learned counsel for the appellants (chaps. 15, 184, 393 of the Laws of 1863; chaps. 8, 72 of the Laws of 1864; chaps. 29, 226, 617 of the Laws of 1865), as embracing the taxes in question, respectively provide, in substance, " that all provisions of law," " existing " at the time of the passage of the act in question, for the

assessment, levying, enforcement and collection of taxes, and for paying over and disbursing the money collected, shall apply to the taxes provided for by "the" act, so far as the same are consistent with "its provisions." The effect of these words was to incoporate into the statutes relating to taxation for bounties every provision of the then existing laws relating to the assessment and enforcement of other taxes, and gave them the same operation as if repeated in detail in each statute. (*People ex rel. Com'rs* v. *Banks*, 67 N. Y. 575.) The authority to assessors to levy and to collect involves every agency theretofore provided, and every step in the proceedings which justifies the designated officer in enforcing, by sale, if necessary, the collection of the tax imposed. A small portion only of the methods provided for would be set in motion if the effort at collection was to be confined to "the collector," whose duty is prescribed and limited by the warrant. The provisions of the general law are made applicable "to the taxes provided for" by the bounty acts. Not merely to a single act, or to a single officer whose duty connects him with their enforcement; they embrace all persons and officers who have to deal with those taxes in any way, until they are satisfied in the mode prescribed by law. They require, therfore, a "return to the" comptroller of the taxes unpaid, as other taxes are returned, and an enforcement by sale as other taxes are enforced. The taxes in question were duly imposed by the legislature. The general law makes all lands, as well as personal property, liable to taxation, and when, in reference to the taxes in question, it was provided that all provisions of law, "for the assessment, levying, enforcing and collection of taxes," should apply to those especially authorized, it was unnecessary to declare that land should be chargeable with their payment, or that they should be the subject of sale.

It is also contended by the appellants that every one of the acts providing for taxes for bounties and kindred purposes is void as being in contravention of section 20, article 3 of the Constitution of this state, which provided as follows: "Every law which imposes, continues or revives a tax shall distinctly state

the tax and the object to which it is to be applied, and it shall not be sufficient to refer to any other law to fix such tax or· object." It is well settled that this provision applies only to a general tax upon all the property of the state, and was not intended to apply to a local tax upon a particular section. (*Matter of McPherson*, 104 N. Y. 306.) The bounty taxes under chapter 15 of the Laws of 1863, if any, were not general, but local, nor were they imposed by the legislature through the acts referred to, but authorized by the citizens of the town, in public meeting assembled, and so are neither within the title. or spirit of the constitutional provision referred to.

A different case is said to be presented by the other acts of 1863 and 1865. (Chap. 184, § 6; chap. 393, § 4 of the Laws. of 1863, and chap. 226, § 3 of the Laws of 1865.) By the first it is enacted that "there shall be imposed for the fiscal year, commencing on the first day of October, 1863, a *state tax for such sum as the comptroller shall deem necessary* to meet the expenses hereby authorized, *not to exceed two mills on each dollar of the valuation*," etc. By the second, that "there shall be imposed  *  *  *  a state tax of two mills, *or such part of that amount as in the judgment of the comptroller may be necessary*, on each dollar of the valuation," etc. By the third, that "there shall be imposed  *  *  *  a tax of· two per cent upon the assessed value of the real and personal property in the state of New York, *or so much thereof as may be necessary to provide*," etc. Several answers to the appellants' contention, concerning these statutes, are suggested, but it is. enough to say that it does not appear that any tax imposed under either entered into the consideration on which the. plaintiff's deed stands. If it did, it was the duty of the defendants to show that fact when attacking the plaintiff's title, and, moreover, upon the motion for nonsuit, or at some other time during the trial, call the attention of the court and opposite party to the supposed defect. This was not done and the proposition advanced by the appellants is not before us.

\*       \*       \*       \*       \*       \*       \*

The other questions argued were discussed by the learned court at General Term, and we find in appellants' argument no answer to the views expressed in the opinion pronounced by them. We see no ground on which the judgment can be reversed. The conveyance by the comptroller is made by statute, presumptive evidence that he had authority to sell and convey the land described in it for arrears of taxes charged thereon, and that all proceedings, things and notices required by law to be had, done or given prior to its execution, have been had or done as required by law. That effect was given at the trial to the deed produced by the plaintiff. It was not overcome by the defendants, nor was the statutory presumption rebutted by any legal evidence.

We think, therefore, that the judgment appealed from should be affirmed.

All concur.

Judgment affirmed.