THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW
   YORK, Plaintiff, *v.* AMELIA GORMAN, as Executrix, etc., of JOHN
   J. GORMAN, Deceased, and Others, Defendants.

*Sheriff of New York.— liability of his executrix and sureties for fees not paid over
   under chapter 523 of 1890 — constitutionality of that act — estoppel to deny its
   validity — form of a bond under this statute — the city may sue upon it — plea of
   plene administravit — right of a claimant to put his claim in judgment.*

Chapter 523 of the Laws of 1890, entitled "An act in relation to the office of
   sheriff of the city and county of New York," providing for the compensation,
   by salaries and fees, of the sheriff and of his subordinates, fairly embraces
   within its subject and title all matters legitimately and naturally connected
   with the administration of that office in its entirety, and the powers, duties and
   emoluments of its administrators, and, hence, is not a violation of section 16
   of article 3 of the then existing Constitution of 1846, as being a local bill
   embracing more than one subject, or embracing subjects not expressed in its
   title; nor does it, in providing for the compensation of the sheriff and his sub-
   ordinates, appropriate, in the sense of the Constitution, "the public moneys or
   property for local or private purposes;" nor does it create a tax.
The executrix of a sheriff who went into office, received his statutory salary, paid
   over a part of the fees received by him to the comptroller of the city of New
   York, and received back one-half of such fees, under chapter 523 of the Laws
   of 1890, is estopped from claiming, in defense of an action brought by the
   mayor, aldermen and commonalty of the city of New York to recover a balance
   of moneys still due the city from him under that act, that it is unconstitutional;
   nor can she interpose a counterclaim for all the moneys which her testator had
   thus paid to the city.
In this respect the sheriff, the sureties upon his official bond and the legal repre-
   sentatives of each of them are similarly situated.
An official bond given by a sheriff, who took office on the day when the act
   (Chap. 523 of the Laws of 1890) went into effect, was considered to have been
   properly drawn under that act and not under the statutes as they existed before
   its passage; and although in form running to the People of the county of New
   York, it was held that it might, without any leave being first obtained to sue
   thereon, be, in a proper case, sued upon by the mayor, aldermen and common-
   alty of the city of New York to recover fees which the sheriff had failed to pay
   over.
In such an action it is not a defense to the executors of a surety that, although
   they duly advertised for claims against their testator, the claim in question
   was not presented "within six months" after the first publication of the notice
   authorized by section 2718 of the Code of Civil Procedure, and that they have
   paid out all the assets of the estate which have come into their hands; the
   statute merely relieves them from any liability for assets which they, after the

time for publication had expired, have legally distributed; it does not prevent a claimant against the estate from liquidating his claim by putting the same in judgment.

SUBMISSION of a controversy upon an agreed statement of facts pursuant to section 1279 of the Code of Civil Procedure.

The plaintiff seeks a judgment against the executrix of former Sheriff Gorman and the sureties upon the latter's official bond, for the sum of $5,388.88, being moneys received by Mr. Gorman, as sheriff, which he did not account for or pay into the treasury of the city. Two of the sureties, Messrs. McQuade and Plunkett, are alive and are sued individually. The other surety, Erastus Crawford, is dead and his executors are sued as such.

Several defenses are interposed to the claim, the principal one being that the act of 1890 (Chap. 523), under which the liability was created, is unconstitutional. This defense is set up by the executrix of Mr. Gorman and also by the legal representatives of the surety Crawford. As a sequence to this defense, the executrix of Gorman sets up a counterclaim against the city for the sum of $160,684.43, being the city's share of the moneys paid over to it by Gorman during his term of office. She also asks, in case the court shall hold the act of 1890 to be constitutional, that the sum to which the sheriff would still be entitled, had he paid over the entire gross sum received by him, be deducted from the amount claimed herein by the plaintiff, and judgment be rendered against her only for the balance. The sureties, McQuade and Plunkett, defend upon several grounds, the principal one being that the obligee named in the bond should have been The People of the State — according to the law prior to the act of 1890 — and not The People of the City and County of New York — as provided in that act. They also make the further defense that, even if the proper obligee is named in the bond, the action cannot be maintained by the mayor, aldermen and commonalty of the city of New York.

The representatives of the surety Crawford claim, further, that they are not liable, because, having duly advertised for claims against their decedent more than six months prior to the commencement of this action, the plaintiff failed to present its claim to them within this statutory period. They aver that, since then, they have fully administered all the "goods, chattels and property which were of"

their testator at the time of his death, and that when this action was commenced they had no assets or money of the deceased, having paid out all such assets and money in satisfaction of lawful claims and legacies. Other minor points were made, but they were either withdrawn upon the argument — *e. g.*, the point that the bond only ran for one year — or else they were subsidiary to the claims already specified. They need not be here specifically referred to.

*Chase Mellen*, for the plaintiff.

*A. C. Shenstone*, for the executrix of Gorman.

*John G. H. Meyers*, for the sureties Plunkett and McQuade.

*Jacob Fromme*, for the executor of the surety Crawford.

BARRETT, J.:

The questions here presented are more numerous than important. The main question, namely, the constitutionality of the act of 1890 may be briefly disposed of. The claim made by the defendants is that this act violated section 16 of article 3 of the then existing Constitution, in that it was a local bill and embraced more than one subject, and that the subjects embraced in it are not expressed in its title. This claim is without merit. There is but one subject embraced in this act and that subject is plainly expressed in its title.

The subject is the office of sheriff of the city and county of New York, and the title is, "An act in relation to the office of sheriff of the city and county of New York." What might reasonably be expected of an act relating to such an office? Clearly, provisions regulating its administration, and the powers, duties and emoluments of its administrators. One would hardly look exclusively for mere matters of detail in an act thus entitled. It is the office in its entirety which is referred to; and all matters legitimately and naturally within the official scope may fairly be said to be embraced within both subject and title. The act in question is within the principle stated in such cases as *The People* v. *Briggs* (50 N. Y. 553); *Sweet* v. *City of Syracuse* (129 id. 316); *People* v. *Backus* (11 App. Div. 147; affd. in Court of Appeals, 153 N. Y. 686), and *Astor* v. *Arcade Ry. Co.* (113 id. 93).

What was here contemplated was a new system of management and administration in the sheriff's office of this county. Fixed salaries were given to the sheriff and his deputies instead of fees. Minute provisions were made for the effective working of the new system. The act was passed in June, 1890, and was to take effect upon the first day of the following January, the intention being not to interfere with the then present sheriff, whose term of office was about to expire, but to apply the new system to the sheriff who should be elected in the *interim.* Mr. Gorman was so elected sheriff in November, 1890, and he accordingly took office, under the act, upon the 1st day of January, 1891. He served out his statutory term, and administered the office throughout under this act. He received his salary from time to time throughout his term, and paid over to the comptroller for the city upwards of $200,000 of the fees of the office. He also received from the comptroller one-half of the fees which he so paid over. He died in May, 1895. And now his executrix makes the extraordinary claim that the act under which her decedent administered his office, received his statutory salary, paid over the fees to the comptroller and received back one-half of them, was unconstitutional; and that as a legal consequence she not only can retain the fees which were not turned into the city treasury, but can actually recover back from the city all those that were.

Even if the act were invalid, neither the officer, nor his sureties, nor his or their representatives, would, under such circumstances, be permitted to plead its invalidity. Having received the moneys in question under the act, the officer would be estopped from claiming its unconstitutionality in order that he might retain them. He certainly could not enjoy the benefits of the act and plead invalidity as to the duties. There is no case directly in point, doubtless because no public officer has ever ventured to make such a claim. But the rule laid down in *Supervisors* v. *Allen* (99 N. Y. 532) points with sufficient emphasis to the governing principle. There it was said that a defendant, who had received funds by virtue of an act which directed that they should be allowed to him for the benefit of his county, could not set up the invalidity of the act under which he received the money and on that ground claim to retain it for himself as against the party for whose benefit he

received it. This, as Judge RAPALLO said, is " fundamental." (See, also, *People* v. *Murray,* 5 Hill, 468 ; *People* v. *Mead,* 36 N. Y. 224 ; *First Nat. Bank* v. *Wheeler,* 72 id. 201 ; *Ross* v. *Curtiss,* 31 id. 606 ; *Buck* v. *City of Eureka,* 30 L. R. A. 409.)

The sureties Plunkett and McQuade do not take this constitutional objection. The executors of Crawford do ; but they stand in this regard in the shoes of their principal. If he cannot question the act, they cannot. If he is liable, they are.

This latter consideration renders it unnecessary to consider the other points made against the constitutionality of the act. Indeed, it was not necessary, for the same reason, to consider even the point which has been discussed. We may say, however, that there is nothing in these subsidiary attacks upon the act.

Some of them are answered by the statement of facts in the agreed case, others by the settled rules of law. For example, the act appropriates no money for local purposes in the constitutional sense. The Constitution was directed to the appropriation for local purposes *of public moneys,* that is, moneys of the State. (*Supervisors* v. *Allen, supra.*) But there was here no appropriation of any moneys, State or local. There was simply a provision for the compensation of the sheriff and his subordinates, with appropriate machinery to provide the means.

Nor does the act create a tax. Article 3, section 20, of the Constitution (prior to 1894) applied only to a general tax. (*Jones* v. *Chamberlain,* 109 N. Y. 100 ; *Matter of McPherson,* 104 id. 319.) But this act, as was said of the act under consideration in *Darlington* v. *The Mayor* (31 N. Y. 186), " does not impose a tax of any kind, either State or municipal. Its provisions may, and no doubt will, lead to the necessity of local taxation ; and the same thing may be said of every act of legislation under which an expenditure for general or local purposes may in any contingency be required."

It is also contended that the bond should have been in the form required by the law which was in force prior to the passage of the act of 1890. That, however, was not contemplated by the act in question. The plain intention of the act of 1890 was that the sheriff elected in the fall of that year should give the bond provided for in that act. That bond related, and was specially adapted, to the new system. It was required to be given before any sheriff,

succeeding the sheriff then in office, should enter upon the duties of his office. (§ 7.). But the defendants argue that this very section (7) did not take effect until the 1st day of January, 1891, for the reason that it is not embraced in the exceptions specified in section 24. This latter section reads as follows : " This act shall take effect on the first day of January, eighteen hundred and ninety-one, *except sections twenty-one and twenty-two thereof*, which shall take effect immediately."

When we look through the act, however, we find that other sections as well as sections 21 and 22 are excepted, not in express terms, but by necessary implication, *e. g.*, section 11, which requires the then-present sheriff, " *at least thirty days prior to November* 1, 1890," to send to the board of estimate and apportionment an estimate in writing of the amount of expenditures required in the office of sheriff for the ensuing year (1891). Thus the 11th section was clearly excepted. And so necessarily was the 7th section, providing for the bond to be given before the succeeding sheriff should enter upon the duties of his office on the 1st day of January, 1891. It is quite clear that what was meant by the phrase (in § 24), " This act shall take effect," etc., was *that the new system in its essential features* should take effect on the 1st day of January, 1891. It was not intended to postpone until that date all the details essential to the proper inauguration of the system. At all events, the bond was given before Mr. Gorman entered upon the performance of his duties, and that was sufficient to give it validity as his official bond.

The point is also taken that, as the bond ran to *the People* of the county of New York, an action thereon cannot be maintained by the corporate body. There is nothing in this point. The mayor, aldermen and commonalty of the city of New York was the legal entity which represented the People of the county. As such, the bond in legal effect ran to it. It is certainly the real, as it is doubtless the only, party in interest. The government of both city and county was vested in the corporate body, and the act itself (§ 18) declares that the fees received by the sheriff thereunder *belong to and are for the benefit of the city and county*, and that for failure to pay over such fees to the comptroller, the sheriff shall be liable *to the said city and county* in a civil action. Thus, the act itself treats " the People of the county of New York" and " the city and

county of New York" as synonymous.  We think it is entirely clear
that the People of the county are required to be named in the bond
as obligee simply because they are the ultimate beneficiaries, and
that the real obligee is the concrete legal body which governmen-
tally represents the general constituency.  There was, therefore, no
necessity for the plaintiff to obtain leave to sue upon the bond.  It
was not the assignee of the bond or the successor of the obligee,
but rather the obligee itself, both in law and in fact.

The remaining question is as to the liability of the executors of
the surety Crawford.

The Code of Civil Procedure (§ 2718) provides that, if " a suit be
brought on a claim which is not presented to the executor or admin-
istrator within six months from the first publication " of the statu-
tory notice (previously provided for), the executor or administrator
" shall not be chargeable for any assets or moneys that he may have
paid in satisfaction of any lawful claims, or of any legacies, or in
making distribution to the next of kin before such suit was com-
menced."  The executors of the surety Crawford here show that
they have paid out all the assets and moneys which came to them
from the decedent in satisfaction of lawful claims and legacies, and
in making the distribution authorized by the statute.  Their conten-
tion is that thus they have become exempt from liability in this case.
We think they misapprehend the meaning of the section.  When it
says that *they shall not be chargeable for* any such assets or moneys
thus distributed, it means that they shall not be so chargeable as
executors, nor required to account to the plaintiff therefor.  It does
not mean that the debt against the estate shall not be liquidated by
a formal judgment.  The only Statute of Limitations as against
such original debt or obligation is that provided for in *section* 1822
*of the Code.*  That section provides in substance that where an
executor or administrator disputes or rejects a claim *which is pre-
sented to him,* the claimant must commence an action for the recov-
ery thereof within six months after the dispute or rejection, or, if no
part of the debt is then due, within six months after a part thereof
becomes due.

The old common-law pleas of *plene administravit* and *plene
administravit praeter* were substantially abolished by the Revised
Statutes.  Section 2718 of the present Code was taken in part

from the Revised Statutes. (2 R. S. 89, § 39.) This latter section, however, provided that in an action brought upon a claim which should not have been presented to the executor or administrator the latter might prove the statutory notice as to publication for claims and subsequent distribution "*in support of his plea of having administered the estate of the deceased.*" The section which immediately followed (§ 40) also provided that in such an action the plaintiff should "be entitled to recover only to the amount of such assets as shall have been in the hands of such executor or administrator at the time of the commencement of the suit, or he may take judgment for the amount of his claim, or any part thereof, to be levied and collected of assets which shall thereafter come into the hands of such executor or administrator." Even under these sections of the Revised Statutes it was held that the plea of *plene administravit* was no longer a good plea or a bar to a recovery. (*Parker's Exrs.* v. *Gainer's Admr.*, 17 Wend. 559; *Allen* v. *Bishop's Exrs.*, 25 id. 414.) Chief Justice NELSON, in the latter case, referring to these sections of the Revised Statutes, made the following pertinent observations: "There are some sections in the Revised Statutes which it is impossible to reconcile with the general system prescribed in respect to the settlement of estates of deceased persons. The system itself does not seem to have been fully comprehended by its authors. A *pro rata* distribution among the creditors of a class, in case of deficit in the assets, is a fundamental principle, for the enforcement of which abundant provision has been made. The whole fund is brought under the control of the surrogate, and not a dollar can be touched without his assent. Executors and administrators are but trustees to settle the estate under his direction and control, agreeably to the principles of the statute. Nothing is gained by obtaining a judgment against them beyond the liquidation of the debt. The creditor gets no costs, except at the discretion of the court, and only his *pro rata* share on the judgment. The result is the same whether the suit be defended or not. (18 Wend. 666; 12 id. 542; 17 id. 559.) The plea of *plene administravit*, therefore, seems altogether inappropriate and useless. It has already been held in the case last above cited that the plea of *plene administravit praeter* is no longer a bar, notwithstanding section 31, 2 R. S. 29, which imports the contrary; and I think we are

bound to say the one in question is not a bar, *though the 39th section seems to indicate otherwise.*"

· It was clearly in view of this incongruous condition of the law, even under the Revised Statutes, and to harmonize and perfect the new system, that the useless and futile pleas suggested in these sections 39 and 40 of the Revised Statutes were omitted in the Code. And their omission must be considered not only in the light of this preceding legislation and the judicial criticism thereupon, but also in the light of other sections of the Code itself. Thus, in section 1822, a Statute of Limitations against the original debt or obligation of the decedent is provided for; in section 1824 an express provision is to be found that in such an action the existence, sufficiency or want of assets shall not be pleaded by either party, and in section 1825 that no execution shall be issued upon a judgment against an executor or administrator, in his representative capacity, until an order permitting it to be issued has been made by the surrogate from whose court the letters were issued. In addition, sections 1835 and 1836 deprive a plaintiff who fails to present his claim, not of his judgment for the debt, but simply of costs. And further judgment in such an action is not evidence of assets in the defendant's hands. It is apparent, therefore, that the purpose and effect of the provision of section 2718, under consideration, are, while permitting the claimant to liquidate his debt against the estate without costs, to limit him to such liquidation, so that the formal judgment shall not be chargeable upon any assets or moneys which the executors or administrators have lawfully paid out after the expiration of the statutory period of six months. Thus, neither the executors here, nor the estate which they represent, will be prejudiced by this liquidation of the debt; while the plaintiff, though it cannot charge the judgment upon the assets which have been administered, may proceed, under the statute, to obtain satisfaction of the judgment from the recipients of those assets.

We think, therefore, that the plaintiff is entitled to judgment against all the defendants for the amount of its claim, with costs, except as to the executors of Crawford, to be collected as against the individual defendants by execution, etc., in the usual manner, and as against the executrix of Gorman and the executors of Crawford as provided by law. We will hear the parties, upon the settle-

ment of the judgment, as to whether the sum which Sheriff Gorman would have been entitled to had he, during his lifetime, paid over the amount in controversy to the comptroller, shall be deducted from the amount of the claim as now liquidated. The plaintiff may be willing to avoid circuity of action and to take judgment for the proper balance. We see no objection to this course if the plaintiff consents to it. The plaintiff is entitled to costs against all the defendants except the executors of Crawford.

VAN BRUNT, P. J., RUMSEY, PATTERSON and O'BRIEN, JJ., concurred.

Judgment ordered for plaintiff as directed in opinion, with costs.