Desmond, J.
This suit was brought for a declaratory judgment that the New York City General Business and Financial Tax Laws (Administrative Code of City of New York, § B46-2.0, subd. a; see enabling act, General City Law, § 24-a) are, if and as applied to plaintiff, unconstitutional because plain *352 tiff’s New York City activities constitute interstate commerce exclusively. As further relief plaintiff demanded judgment for $23,813.41 in refund of such taxes paid to the city by plaintiff under protest for the years 1947, 1948 and 1951. At Special Term each side moved for summary judgment in its favor and plaintiff was granted all the relief it had prayed for. However, the Appellate Division reversed and dismissed the complaint.
The problem is a familiar one. Are plaintiff’s New York City activities so substantial and separable from its interstate commerce as to be subject to this local tax? A negative answer will end the lawsuit and give plaintiff judgment. An affirmative answer will leave unanswered further inquiries as to whether the allocation formula of this tax law (see Administrative Code, § B46-11.0, subd. 8, and City Comptroller’s Regulations, art. 211) as applied to plaintiff is arbitrary and discriminatory and, if so, whether relief as to that can be granted in a plenary action like this one.
The facts are undisputed. Plaintiff is a Massachusetts corporation with its principal business and executive office in Providence, R. I., authorized to do business in New York State (but holding no corporate meetings here) and engaged in manufacturing textile fabrics and curtains in factories outside this State. All plaintiff’s receipts come from the sale of those fabrics and curtains. One of plaintiff’s out-of-State offices arranges for the purchase of cotton in the South, then has the cotton shipped to plaintiff’s factories in Rhode Island, Massachusetts and Vermont from which plaintiff ships out to its customers in various States greige goods (unbleached fabrics) and curtains and curtain materials. Some of the unbleached fabrics are sent for refinishing by plaintiff to dyeing plants (some of them in New York State) owned by others, where the greige goods are dyed or printed as required by accepted orders from plaintiff’s customers. In New York City plaintiff has two separate offices, one in the 1‘ curtain trade district ’ ’ and one in the ‘ ‘ textile district ’ ’. A vice-president of plaintiff supervises both offices and is head also of its finished goods department. Under him are two other vice-presidents, each managing one of the two New York City offices. The New York offices employ altogether about 90 people (out *353 of its total force of 8,500 people) of whom 20 or so are salesmen, the rest being clerks, receptionists, telephone operators, a credit manager, etc. The rent for the two New York City offices runs to about $50,000 a year. Plaintiff has no factory, warehouse or store in New York State, keeps no stock of goods in this State and owns no property here except the furnishings of its New York City offices.
The functions of plaintiff’s New York City offices and staff are well described in its own complaint in this suit as follows: “to maintain contact with the trade by soliciting established and prospective accounts; to receive, and to reject, modify or accept, offers to buy; to forward accepted offers to one of plaintiff’s plants or warehouses outside the State of New York to be filled; to perform credit investigations and functions; to make up and dispatch invoices of sales of finished goods, but not of greige goods or curtains; and to receive and deposit payments from customers.” Plaintiff’s- New York City salesmen take from prospective customers and submit through their department heads to one of the New York City vice-presidents oral proposals to buy plaintiff’s goods (the minimum order is for 3,000 yards). If the price offered by the customer is up to plaintiff’s established price and the order is of a size which does not create special production problems, the offer is accepted and a contract entered into by plaintiff’s New York City personnel without further reference to plaintiff’s other offices or factories. If there is doubt in the minds of New York City personnel as to adequacy of the price offered of as to availability of the goods, there is consultation between the New York City and Providence offices. If the doubt is resolved, the offer is accepted by means of a contract made and signed for plaintiff at and by the New York, City office (except that in some instance the customer by preference uses his own purchase form which is accepted by plaintiff at New York City). No goods, however, are shipped from anywhere in New York State to any customer anywhere. Goods are shipped f.o.b. out-of-State points.
In addition to its 20 salesmen working in New York City, plaintiff has other salesmen in other parts of the United States. Purchase offers obtained by those out-of-State salesmen are sent by them to one of the two New York City offices and there *354 after the offers are processed at New York City just like the offers which originate in New York City. All checking of a customer’s credit is done at New York City and no orders are accepted until the credit has been approved by the credit manager and his employees at one of the New York City offices. All plaintiff’s sales records and its accounts with its customers are kept at the New York City offices as is an inventory of all plaintiff’s goods wherever located. All payments for goods sold are received and banked in New York City but billing to customers for greige goods only is from Providence.
Plaintiff’s brief asserts that its “ sole and only activity in the City, or the State, of New York consists of the negotiation of such interstate sales.” However, the record shows activities going much beyond or outside sale negotiating. Plaintiff’s principal vice-president in New York City, a Mr. Kennedy, not only has charge of the selling of all plaintiff’s finished goods but supervises a department in New York City which creates designs and purchases designs for fabrics. Also, on the basis of information as to trends brought in by his salesmen, Kennedy gives directions to Providence as to colors and amounts of various dyeings. The New York City offices, in response to the discovered demands of the market, instructs Providence as to “ the type of fabrics that we (New York) wished to be made ”. The New York City curtain trade office similarly gives instructions direct to plaintiff’s curtain factory in Warren, Rhode Island, to manufacture more of certain curtain material when the inventory record kept at New York City showed an insufficient amount of that material on hand. The New York City offices carry on other incidental activities such as placing advertising in trade publications and making adjustments or settlements on at least some complaints of customers.
Is there anything in all this ‘ ‘ that can be regarded as a local business as distinguished from interstate commerce ” (Cheney Bros. Co. v. Massachusetts, 246 U. S. 147, 153-154)? Or is plaintiff’s local activity “such an integral part of the interstate process, the flow of commerce, that it cannot realistically be separated from it” (Michigan-Wisconsin Pipe Line Co. v. Calvert, 347 U. S. 157, 166)? The applicable rule of law is old and simple to state but less simple to apply, A local privilege *355 tax like that of New York City may not be imposed upon interstate sales or solicitations by an interstate business (Matter of United Piece Dye Works v. Joseph, 307 N. Y. 780, cert. denied 348 U. S. 916). Mere local “drumming up” of orders does not without more authorize local taxation of the transaction when the goods are located and delivered in another State (Norton Co. v. Department of Revenue, 340 U. S. 534, 537). On the other hand, the local authorities may validly tax the privilege of doing business locally if the local business operations though related to interstate movements of goods extend substantially beyond the sale and promotion of the products and include a “local incident” which is “ sufficient to bring the transaction within its taxing power” (Norton Co. v. Department of Revenue, supra, p. 537).
Scores of decisions are cited to us by the parties but to reach decision on this phase of the case we will examine three only of those cited cases. The first is Matter of United Piece Dye Works v. Joseph (282 App. Div. 60, affd. 307 N. Y. 780, supra). United was a New Jersey corporation which at three plants (none of which was in New York State) dyed, printed and finished fabrics owned by others and which were received by United from its customers’ textile mills, all of which were outside the State. After its operations on the fabrics were completed, United shipped the goods back to the customers, sometimes at New York State points. In New York City United had a sales, promotional and clerical staff. The sales representatives carried about and showed to prospective customers samples of the work done at the out-of-State dyeing plants of United and furnished other information as to United’s services. The United Piece case record makes it clear that the New York office did no more than “solicit or promote”. Sales and contracts were never consummated in New York nor were bills sent from there or payments received there. The New York courts held that United conducted no separable business, the privilege of doing which could be locally taxed.
Next (but out of chronological order) we consider the Norton v. Department of Revenue case (340 U. S. 534 [1951], supra) which involved an Illinois privilege tax on selling tangible personal property in Illinois, expressly exempting “business *356 in interstate commerce ”. The Illinois operations of the Norton concern, a Massachusetts corporation, were diversified. Its over-the-counter retail sales from local stock were, of course, locally taxable. Similarly, it seems, the local tax was held by the courts to be due on sales of goods ordered through the Chicago store but delivered not from the Illinois stock but direct from Massachusetts to the Illinois buyers. As to sales of goods not carried in Illinois stock but shipped into Illinois to fill orders sent direct to Massachusetts by Illinois customers and so not “generated” by Norton’s local services, the Supreme Court .held “interstate commerce” and exempted these from the tax. A controversial class of Norton sales was of goods not carried in stock by it in Illinois but sent and delivered through the Chicago store. This last class of sales, also, was held by the Supreme Court to be subject to the Illinois privilege tax. In the Norton opinion the Supreme Court, restating the rule as generally understood, made this statement (supra, p. 537): “ Where a corporation chooses to stay at home in all respects except to send abroad advertising or drummers to solicit orders which are sent directly to the home office for acceptance, filling, and delivery back to the buyer, it is obvious that the State of the buyer has no local grip on the seller. Unless some local incident occurs sufficient to bring the transaction within its taxing power, the vendor is not taxable.” Since Norton employed no Illinois solicitors or traveling salesmen it seems obvious that the “ local incident ” which justified local taxation as to that last-described group of sales was the maintenance in Illinois of the local office or store and the services it rendered in bringing about or completing those sales. Wrote the Supreme Court in Norton (supra, p. 538): “Petitioner has not established that such services as were rendered by the Chicago office were not décisive factors in establishing and holding this market.”
The third and last of the three cases we analyze is Field Enterprises v. State of Washington (352 U. S. 806 [1956]) where the Supreme Court affirmed the Washington State courts (47 Wn. [2d] 852) in holding Field’s book sale business to be subject to the State “ business and occupation tax ”. In Field, the United States Supreme Court wrote no opinion beyond the *357 citation of the Norton decision (supra). But the absence of a full opinion does not make Field any less controlling an authority (see speech of Justice Hablan, Record of Association of Bar of City of New York, Yol. 13, pp. 541, 546). The facts of the Field case are set out in the Washington Supreme Court’s opinion. Field is a Delaware corporation with its principal office in Chicago and a divisional office in Seattle, staffed by two managers and clerks and bookkeepers. The Seattle district controlled operations in several States and employed a large number of salesmen of whom about 30 worked full time in the State of Washington. The sales were of sets of educational books, the stocks of which except necessary samples were maintained outside Washington. The salesmen solicited prospective customers and when successful procured signed order forms which were subject to acceptance in Chicago. The salesmen sent the form and a down payment (or full payment) to Chicago where the order was accepted or rejected. Field’s activities were held by the courts to be subject to the Washington State privilege tax which, like New York City’s, is measured by gross receipts.
There are, of course, factual differences between Norton and Field (supra) and between Field and the present case. But the differences favor taxability here, since the local New York City activities of the present plaintiff considerably exceed the local activities in Norton and Field and include a substantial measure of control by plaintiff’s officials in New York City of production, contracting, shipment and credit. We conclude that the Appellate Division was correct in this case in holding that the imposition on plaintiff of this New York City tax did not violate the Interstate Commerce Clause of the Federal Constitution.
Plaintiff argues, as did the dissenting Justices in the Appellate Division, that this is in effect an overruling of the comparatively recent Matter of United Piece Dye Works v. Joseph (307 N. Y. 780, cert. denied 348 U. S. 916, supra). The Supreme Court did not affirm in Matter of United Piece Dye Works but denied certiorari only. But the more persuasive answer to the argument from the United case is that the facts of that situation went no further than mere “ drumming up business ”, *358 while here there are separable “ local incidents ” consisting of important services before and after sale and shipment of the goods.
After the argument herein, the United States Supreme Court, on February 24, 1959, handed down an opinion in two cases consolidated for decision: Northwestern States Portland Cement Co. v. Minnesota and Williams v. Stockham Valves & Fittings (358 U. S. 450). The decision upheld the validity of apportioned State net income taxes upon companies engaged exclusively in interstate commerce in the taxing States. We find nothing in that decision requiring any change in the conclusions now reached by us in the present case.
Plaintiff argues (and cites section 22 of article III of the New York State Constitution in support) that the statute imposing this New York City General Business Tax is unconstitutionally vague and represents an unconstitutional delegation of legislative power. The cited provision of the New York State Constitution does not apply at all to local taxes (see Matter of McPherson, 104 N. Y. 306; Jones v. Chamberlain, 109 N. Y. 100, 109). Plaintiff’s other charges of unconstitutional vagueness and delegation of power have been rejected by this court as to this very tax in Olive Coat Co. v. City of New York (283 N. Y. 733) which decision followed Matter of Western Elec. Co. v. Taylor (276 N. Y. 309; see, also, Matter of New Yorker Mag. v. Gerosa, 3 N Y 2d 362, 369, appeal dismissed 356 U. S. 339). The same result was reached in the later litigation between Olive Coat Company and the City Comptroller (reported at 287 N. Y. 769). Accordingly, these questions are no longer open in this court.
Finally, appellant asserts that the allocation formula applied by the City Comptroller to plaintiff’s combined receipts produces an arbitrary and unreasonable result in that it taxes plaintiff’s one third of whole gross receipts from its general interstate business whereas, according to plaintiff, only about 1% of its tangible property is within New York City and only some 2% to 3% of its total annual wage and salary budget is paid for services rendered to it by its officers and employees in New York City. Generally, plaintiff’s contention in this respect is the same as that made by the taxpayer in Matter of *359 Gulf Oil Corp. v. Joseph (307 N. Y. 342) where this court rejected as arbitrary and contrary to legislative intent the use of the 33%% minimum which the Comptroller applies in these cases by use of the allocation formula set out in article 211 of his regulations (see Administrative Code of City of New York, § B46-11.0, and see our opinion in the Gulf Oil Corp. case, supra). However, plaintiff’s insuperable difficulty at this point is that his attack on the amount of the tax .and the correctness of the formula for arriving at it cannot be litigated in a plenary suit like the present one. The sole remedy for relief from incorrectness of allocation formula or the application thereof is a proceeding under article 78 of the Civil Practice Act, not by action (Administrative Code, § B46-9.0; Lewis v. City of Lockport, 276 N. Y. 336; Olive Coat Co. v. City of New York, 283 N. Y. 733, supra; Cooper Union v. City of New York, 298 N. Y. 578; Excelsior Oil Co. v. City of New York, 4 A D 2d 937, motion for leave to appeal denied 4 N Y 2d 675). As to the New York City sales tax we held many years ago in Dun & Bradstreet v. City of New York (276 N. Y. 198, 206) that “ where taxing officers have jurisdiction, their acts are not void for mere error * * * but can only be reviewed in the manner provided by statute ” (see Rockland Light & Power Co. v. City of New York, 289 N. Y. 45). Since this general business tax applies on its face and not unconstitutionally to plaintiff’s New York City activities, no reason appears why plaintiff to contest the amount of the tax or the formula for determining the amount should have any relief except that provided for within the statute itself (see Richfield Oil Corp. v. City of Syracuse, 287 N. Y. 234, 242). A taxpayer may and frequently does (see Matter of New Yorker Mag. v. Gerosa, 3 N Y 2d 362, supra) raise in an article 78 proceeding all possible questions of constitutionality, applicability, correctness of formula and of tax.
The judgment should be affirmed, with costs.
Chief Judge Conway and Judges Dye, Fuld, Froessel, Van Voorhis and Burke concur.
Judgment affirmed.